## COOPER et al. vs. MERRITT et al.

1.  MISREPRESENTATION:    *When it will not vitiate a contract.*
    The rule adopted in *Yates et al.* v. *Pryor,* 11 Ark., 58, that misrepresentation by a vendor of real estate, in regard to a matter equally within the knowledge of both the contracting parties, will not vitiate, adhered to.

Cooper et al. vs. Merritt et al.

2. ————: *What will entitle the party to rescind.*
   Where a vendor of real estate, for the purpose of inducing his vendee to purchase, represented that the land sold embraced thirty or forty acres of cleared land and other improvements, when in fact it only embraced about one acre of cleared land and none of the other improvements, the vendee is entitled to rescind the contract.

3. RESCISSION: *Vendee's lien for purchase money advanced.*
   Upon the rescission of a contract for the sale of land, the vendee has an equitable lien for purchase money he has advanced.

APPEAL from *Arkansas* Circuit Court in Chancery.

Hon. P. C. DOOLEY, Circuit Judge.

*Cockrell,* for appellants.

Error to award damages after the bond for title had been annulled. *Todd* v. *Gee,* 17 Vesey, 273; 2 Story's Eq., sec. 796 *et seq; Bellows* v. *Cheek,* 20 Ark., 437.

Appellees had equal opportunity to examine the lands. *Hill* v. *Bush,* 19 Ark., 522

*Rose,* for appellee.

Vendee has a lien on rescission, for purchase money prematurely paid. Montesquieu on Liens, p. 100; 2 Sto. Equ. Juris., sec. 1217 and n.; *Burgess* v. *Wheat,* 1 W. Black., 150; *Brown* v. *East,* 5 Mon., 408; *Finch* v. *Earl of Winchelsea,* 1 Pierre Williams, 282; *Oxenham* v. *Esdaile,* 3 Yer. Ju., 264; *Ludlow* v. *Grayall,* 11 Price, 58; *Small* v. *Atwood,* 1 Yonege, 507; *Payne* v. *Atterbury Harring,* Chy. Rp., 414; *Lowell* v. *Mutual Ins. Co.,* 8 Cush., 132; Cuote. on Mort, 265.

ENGLISH, CH. J. :

The bill in this case was filed by William Merritt and Nero Weatherspoon, in the Arkansas Circuit Court, against Garrett Cooper and O. J. Lewis.

The bill alleged in substance : That on the first of February, 1872, plaintiff purchased of defendants the west half southwest quarter of section 29, the southeast quarter of southeast quarter section 28, and north half northeast fractional quarter of section

33, township 6 south, range 6 west, containing 172.75 acres, situate near Swan Lake, in Arkansas county, for the consideration of $2,000.

That defendants executed to plaintiffs a bond for title, in which they acknowledged that plaintiffs had paid them $1,000 of the purchase money, and given them a note for $1,000 payable on the first of December following.

That at the time and before the purchase, defendants pretended to show plaintiffs said lands, and represented to them that there were almost forty acres of the lands cleared; and went with plaintiffs and showed them where the lines run, which, if they had been as represented, would have taken in at least forty acres of cleared land, and one double and one single cabin; and they also represented that the gin-house belonging to the Dun place was on the lands sold by them to plaintiffs.

That plaintiffs were colored men, could neither read nor write, knew nothing about the description of lands, and had to rely entirely upon the honesty and veracity of others for information in regard to such matters.

That they were assured by defendants that all, or nearly all, of said lands were above overflow.

Plaintiffs were requested by defendants not to say anything about the purchase of the land for a time, as they said the white people in the neighborhood were opposed to negroes purchasing or owning land, and would likely cause some trouble about it.

Plaintiffs, believing at the time that defendants were honest and truthful in the matter, did not make any further inquiry in regard to the lands.

Plaintiffs supposed the matter was all right until sometime about the month of ——, 1872, when the county surveyor surveyed the lands, and it turned out that the lands described as above and sold plaintiffs by defendants were not the same as

those shown them ; and that, instead of embracing the forty acres of cleared land, cabins and gin house, as represented, they did not embrace exceeding two acres of the cleared land, nor either of the cabins, or the gin house.

Plaintiffs also learned, after the purchase, that the lands were subject to overflow ; that there were not exceeding two acres of the lands that were not subject to overflow from the waters of the Arkansas river during high water.

That the lands shown plaintiffs by defendants, and which they supposed they were purchasing, were very valuable, the improved land being worth from $30 to $40 per acre, and their object in purchasing the lands was to get the improved land.

That the lands described were not valuable, not being worth over $3 or $4 per acre, and being subject to overflow, plaintiffs did not want them at any price.

That after the lands were surveyed, plaintiffs went to defendants and demanded a cancellation of the trade, and a return of the money they had paid them, and defendants talked like they would do so, and asked plaintiffs to give them the title bond, which they did, after which plaintiffs demanded the money they had paid defendants, and the note they had given them for the lands, and they refused to refund the money, or surrender the note, etc.

That though the bond for title recited that plaintiffs had paid defendants $1000, they, in fact, paid only $907. That they expected to pay the balance of the cash payment in a short time after the purchase, but discovering the imposition practiced upon them, they refused to do so, etc.

Prayer that the contract of sale be rescinded, the title bond cancelled, the defendants be required to surrender the note, etc., and that plaintiffs have a decree against defendants for the $907

*Vol. xxx.—44.*

paid them on the lands, with interest, etc.; that the same be declared a lien upon the lands, and, if not paid by a day to be fixed, they be sold to satisfy the decree, etc.

In their answer, the defendants admit the sale of the lands described in the bill to plaintiffs, at the time and on the terms stated in the bill, and the execution of the title bond, but deny that plaintiffs paid them $907 on the lands, as alleged.

Admit that they showed the lands to plaintiffs at and before the time of the sale, but deny that they represented the lands to be above overflow, or that there was forty acres of the lands cleared and in a state of cultivation, or that there were any cabins or gin house on them.

On the contrary, they aver that before the sale, for the mutual benefit of the parties, they procured the county surveyor to survey the lines and establish the boundaries of the lands, and that plaintiffs were present when the survey was made, and that defendants told them at the time of the sale that the lands were subject to overflow.

Deny that they requested plaintiffs to keep silent about the sale, and aver that the sale was public and generally known in the community, defendants frequently speaking of it among their neighbors.

Admit that about the 14th of November, 1872, plaintiffs came to them and demanded a cancellation of the trade, which they then consented to, on the express agreement that they were to retain the amount of the advance payment made them by the plaintiffs, and, on this agreement, plaintiffs cancelled and delivered up to them the bond for title, which, with an endorsement, is made an exhibit.

Aver that plaintiffs expressed no dissatisfaction with their purchase until some months after the sale; and that the sale was not completed, the title bond executed, the money paid and note

taken until after the lands were surveyed and the lines established in the presence of plaintiffs.

Deny that they made false representations to plaintiffs as alleged, to induce them to purchase the lands. Aver that, at the same time the bond for title was cancelled, they gave plaintiffs a receipt or acquittal against their note, if it was not delivered up to them, and that the trade was cancelled by mutual consent of the parties.

The cause was heard upon bill, answer and depositions, and decree for plaintiffs in accordance with the prayer of their bill, and the defendants appealed.

*First*—The appellants did not testify in the case. The appellees testified that appellants represented to them that the lands were not subject to overflow, when and before they made the purchase. That the lands were subject to overflow from the Arkansas river, there can be no doubt, from all the evidence. They were outside of the levee and the marks of the overflow were apparent. The appellees were not strangers, but had resided for several years before they purchased the lands on a neighboring plantation, and with ordinary care and prudence, when the lands were shown them might have observed the indications of overflow. The rule as to such misrepresentations is laid down in *Yeates et al.*, v. *Pryor*, 11 Ark., 58.

*Second*—The depositions conduce to prove that the lands were surveyed, and the lines established, after appellees purchased them, and not before as alleged in the answer. That by way of inducing appellees to make the purchase, appellants represented to them that they embraced thirty or forty acres of cleared land, some cabins, and perhaps a gin-house shown them by appellants, and it turned out upon the lines being run that they did not take in exceeding an acre of the cleared land, nor the cabins, etc.

Such a misrepresentation of the quality of the lands entitled the appellees to a rescission of the contract of sale.

*Goodwin et al.,* v. *Robinson, ante,* and cases cited.

*Third*—The appellants deny in the first paragragh of their answer that appellees paid them $907 on the lands, but afterwards, in effect, admit the payment, and aver that by agreement of the parties the contract was rescinded, the title bond canceled and delivered up to them, and that appellees were to lose, and they were to retain, the money paid them.

The endorsement upon the title bond, made an exhibit to the answer, is as follows:

" We, the undersigned, transfer and cancel the within bond; the same is annulled from this day. November 14th, 1872." To which are the names and marks of the appellees.

The evidence conduces to prove that appellees paid the $907 on the lands when or before they took the bond for title ; that after the lands were surveyed, and they ascertained that the cleared land and cabins were not embraced, they were dissatisfied with the trade and went to appellants, and insisted upon a rescission of the contract of sale ; that they were illiterate and confiding, and that appellants induced them to cancel and surrender the bond by promising to pay them back the money that they had paid them on the lands, but afterwards failed to do so.

The allegations of the answer that appellants were released by agreement with appellees from all obligation to repay the money advanced upon the lands, were in avoidance and affirmative, and are not sustained by the depositions.

The weight of the evidence is to the contrary.

*Fourth*—Though doubted by Mr. Sugden, it seems now to be very well settled that upon a rescission of a contract for the sale of land, the vendee has an equitable lien upon the land for the money advanced upon it.   2 Story Eq., sec. 1217 and note ; *Brown, et al.,* v. *East,* 5 Monroe, 407 ; *Wickman* v. *Robinson,* 15 Wisconsin, 494 ; *Macreth* v. *Simmons,* 1 Lead. Cases in Equ., (Hare and Wallace notes,) 357.

The decree of the court below must be affirmed.