HOYER *v.* EDWARDS.

Opinion delivered November 10, 1930.

*Jeff Bratton,* for appellant.
*Wm. F. Kirsch,* for appellee.

HART, C. J., (after stating the facts). According to the allegations of the complaint and from the findings made by the chancellor, this is a suit to reform the description of land in a deed. The question raised by the appeal is one of fact because the law relating to the reformation of written instruments by parol evidence has been well settled by the repeated decisions of this court. There is no doubt that a court of equity may reform a deed or other written instrument where, on account of mutual mistake, such instrument does not reflect the intention of the parties thereto, and the mistake may be proved by parol evidence only. To justify reformation, however, against the will of one of the parties thereto, the evidence of the mistake must be established by clear, convincing, and decisive evidence. *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52; and *Sewell* v. *Umsted,* 169 Ark. 1102, 278 S. W. 36. So, too, parol evidence is admissible in an action to reform a written instrument on the grounds of fraud and mistake, but the evidence to warrant a reformation must be clear and convincing. *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139. This rule of law is so well established in this State that a further citation of authorities is useless. The only difficulty lies in applying the rule to each particular state of facts. The law does not permit the title to real property to rest in parol, and does not allow the plain language of a deed to be changed on parol testimony of promises and agreements had prior to the execution of the instrument. The reason is that deeds are supposed to be the best possible protection to owners of land, and it is the policy of the law to make them so. While they may be reformed by parol evidence alone, such evidence must be clear and convincing; otherwise the title to land would rest in complete confusion and doubt.

Here there is irreconcilable conflict in the testimony of the parties to the transaction. It is true that the plaintiff introduced the testimony of several witnesses to the effect that the defendants had subsequently acknowledged

that the fence which had been erected was the boundary line between them. While this evidence is competent, it is not very trustworthy. The language of the deed is plain and unequivocal, and should not be set aside by declarations or conversations made and had after its execution which may have been incorrectly understood or which have been consciously or unconsciously changed by the witnesses or imperfectly heard at the time. The record does not show precisely when the pleadings were filed in this case, but it does show that the taking of depositions was commenced on the 26th day of January, 1929. The deed to the land was executed on the first day of July, 1921. The fence between the two tracts was erected in 1924. Thus it can not be said in any sense that the plaintiff has acquired a title to the twenty-acre strip of land by adverse possession, and we do not think that her testimony and that of the other witnesses in her behalf establishes her right to a reformation of the deed by that clear, convincing, and decisive evidence which the law demands.

Nor do the facts in this case call for an application of the rule with regard to agreed boundaries. This court has held that where adjacent owners are in dispute as to their dividing line, their oral agreement as to the boundaries establishing the line, when followed by possession with reference thereto, is valid and binding on the parties. Agreements in such cases do not operate as a conveyance so as to pass title from one to another, but they proceed upon the theory that the true boundary line is in dispute, and that the agreement serves to fix the true line to which the title of each extends. The parties thereafter hold to the line as if by virtue of their respective deeds. The theory is that the parties have simply, by agreement, settled their boundary line which was in doubt, instead of having the court settle it for them. *Sherrin* v. *Coffman,* 143 Ark. 8, 219 S. W. 348; and *Glasscock* v. *Mallory,* 139 Ark. 83, 213 S. W. 8.

According to the testimony of Mrs. Edwards, when she purchased the land and received her deed in July, 1921, Hoyer told her that the boundary between them would be a line running north from the corner between the Allison and the Asbury land which was situated south of the tract in question. On the other hand, Hoyer denied that he made any such representation to Mrs. Edwards as to the boundary line. They both agreed that Hoyer intended to convey to her one-half of a tract of land containing in the aggregate 187.62 acres; that she was to receive the western half of the tract, and that Hoyer was to retain the eastern half thereof. Evidence was introduced by each of the parties to corroborate their testimony in this respect.

There is no need in this connection to determine where the preponderance of the evidence on this point lies, because, even if Hoyer had pointed out the boundary line at the time the deed was executed, this would not be an agreement settling the boundary line. It would simply amount to a misrepresentation which might entitle Mrs. Edwards to rescind the contract. She does not ask for a rescission of the contract, but only for a reformation thereof. The fact that she asked for a reformation of the contract so as to include the disputed strip of land recognizes that she does not think that the disputed strip is within the calls of her deed. She states that she went into the possession of the land in 1921, and that sometime in 1924 a fence was built between them which was to be the boundary line. Hoyer denied this in positive terms. He testified that he did not know where the fence was built, and only agreed that a fence might be erected between them. The testimony of Hoyer's tenant shows that he made the agreement with Mrs. Edwards to erect the fence for the purpose of protecting their crops and that Hoyer had nothing to do with the erection of it.

The burden of showing that there had been an agreement between the parties to establish the boundary line rested on Mrs. Edwards, and we are of the opinion that

she failed to meet the burden in this regard. Hoyer admitted that he blazed a line for timber cutters to follow, but said it was done as a matter of precaution so that the timber cutters would not trespass on the land of Mrs. Edwards, and that it was not made with a view to establishing a boundary line between them. Mrs. Edwards was not present and had nothing to do with establishing this line. This question is not raised in the original briefs of the parties; but, inasmuch as the case is in equity and equity cases are tried *de novo* upon appeal, the question raises itself. After a careful consideration of the testimony, we are of the opinion that Mrs. Edwards failed to establish by a preponderance of the evidence that there had been an agreement between her and Hoyer as to the boundary line between them. Each of them testified that she was only to get one-half of the tract which would amount to 93.81 acres. After the dispute as to the boundary line on the east end of the tract conveyed to Mrs. Edwards, she went upon a tract of land on the west side and cut timber which would not be included within the 93.81 acres if the boundary line on the east claimed by her is to be considered the true boundary line. This tends to show that she intended to claim 93.81 acres of land irrespective of the disputed strip. In any event we do not think she has shown by a preponderance of the evidence that there was an agreement between her and Hoyer for the establishment of a boundary line between the two 93.81-acre tracts in question.

We now come to a consideration of the damages claimed by Hoyer in his cross-complaint. He asks for rents on the disputed strip for the past three years and for the value of the timber cut therefrom by Mrs. Edwards. In a case note to 33 A. L. R. at 1039, it is said that the right of a vendee to base an affirmative or defensive claim upon the ground of the vendor having fraudulently misrepresented or concealed the position of boundary lines has been affirmed in numerous cases. In *Haynes* v. *Harper*, 25 Ark. 541, the boundaries were mis-

represented in such a manner as to lead the vendee to suppose that all the tract sold was of good quality, whereas it really embraced a parcel of poor, wet land. In *Cooper* v. *Merritt,* 30 Ark. 686, the vendor pointed out to the vendees, boundary lines which, if they had been as represented, would have included much more cleared land than that actually contained in the parcel sold.

The cross-complaint of Hoyer was tantamount to an action by him under the contract, and Mrs. Edwards, his vendee, had a right to defend the cross-complaint on the ground that she had been, induced to enter into it by the vendor's fraud. Therefore, after a careful consideration of the evidence on this point, we are of the opinion that Hoyer was not entitled to recover anything from Mrs. Edwards on his cross-complaint, either by way of rents or by way of damages for cutting and removing the timber from the disputed strip of land.

It is true, as pointed out above, that Mrs. Edwards has not asked for a rescission of the contract on the ground of fraud in the pointing out of the boundaries to her when the sale of the land was made. She may have elected to keep the land notwithstanding the fraud, but this did not prevent her from setting up the fraudulent misrepresentations in pointing out the boundary line to her as a defense to the cross-complaint of Hoyer for damages for cutting and removing the timber on the disputed strip of land and for rents which had accrued for the past three years just prior to the suit.

The result of our views is that the decree will be reversed, and the cause will be remanded to the chancery court with directions to dismiss the complaint of Mrs. Edwards for a reformation of the contract for want of equity and also to dismiss the cross-complaint of Hoyer for want of equity, in so far as his right to recover damages for cutting and removing the timber and for rents is concerned. It is further ordered that a decree shall be rendered in favor of Hoyer for the recovery of the possession of the disputed strip of land.