CASE 60—PETITION EQUITY—SEPTEMBER 23.

# Deposit Bank of Cynthiana vs. Berry's adm'r.

### APPEAL FROM HARRISON CIRCUIT COURT.

1. To preserve an execution lien and levy, it is necessary that the delivery of the execution to the sheriff should be followed up by a prompt levy of it on the property of the defendant, a return of the fact, and a sale within a reasonable and proper time; or if, upon the failure of the sheriff to discharge his duties, or any of them, the plaintiff should, without unreasonable delay, take steps to compel him to perform his duty.

2. Inaction for three years, without attempting to perfect a levy by a sale of the property, was well calculated to conceal from the community the fact that there was a levy; and those who may have known of it at the time were authorized to conclude that it had been satisfied. Such laches, so far as third parties are concerned, must be regarded as a waiver, or an abandonment of the levy.

W. W. TRIMBLE,                                    For Appellant,

CITED—

*Rev. Stat., sec.* 34, *chap.* 37.

A. H. WARD,                                        For Appellee.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

On the 13th of April, 1860, Saml. F. January drew a bill of exchange on John M. January, payable to the order of George W. Berry, four months after date, for one thousand two hundred and twenty-five dollars and ninety-seven cents; it was accepted by John M. January, payable at the Deposit Bank of Cynthiana, and was indorsed by said Berry and William T. Redman. Said bank, as the holder of the bill when it matured, had it protested for non-payment, and then brought an

SUMMER TERM, 1867.                237

Deposit Bank of Cynthiana vs. Berry's adm'r.

action in the Harrison circuit court against the drawer, acceptor, and indorsers, to coerce the payment thereof.

At the November term, 1860, of said court, judgment was rendered against the acceptor and indorsers of said bill for the amount thereof and costs, including the costs of protest; and at the May term, 1861, of said court, judgment was rendered against the drawer thereof. But on the 3d of December, 1860, the three defendants against whom judgment had been rendered in November preceding, replevied the same, with Thomas A. Rankin as their surety.

On the 4th of March, 1861, an execution issued on said replevin bond, and was placed in the hands of the sheriff of Harrison county, who returned it indorsed, that on the 30th of April, 1861, he had levied it, with four others, on quite a large number of cattle, horses, and sheep, to be sold at Berry's Station May the 14th, 1861.

The personal estate thus levied upon was not sold, and on the 2d of November, 1861, a *venditioni exponas* issued, commanding the sheriff to sell said property, which he had taken under appellant's execution, to satisfy and pay said debt; and before said property was sold Berry gave up in writing certain real estate described in the writing, to be sold in *lieu* of the personal property, which was valued according to law, and was valued at more than appellant's debt, but which was not then sold. Nor does it appear in the record before this court that there was any further or other effort made to enforce the collection of the debt until the 8*th of February*, 1865, when another *venditioni exponas* issued, commanding the sheriff to sell the personal estate upon which the execution of the 30th of April, 1861, was levied, without naming or referring to the real estate which Berry had given up in lieu of the per-

sonalty, and upon which the sheriff returned, "This *execution* suspended by the death of G. W. Berry."

After the death of Berry, it was ascertained his estate was insufficient to pay his debts, and his administrator brought an action against his heirs and creditors to settle his estate as an insolvent debtor; and upon a reference of it to the master, appellant presented its debt, and insisted that it should be allowed by the master as a preferred debt, or rather that a *bona fide* lien had been created in its favor on the land of Berry, which he had surrendered to be sold in lieu of the personal property upon which the execution heretofore described had been levied, or that so much of the proceeds of said land as should be necessary for the purpose should be applied to the payment of its entire debt. This the court below refused, but adjudged to appellant a *pro rata* share of the funds with the other general creditors; and of that judgment appellant now complains.

Whether, therefore, appellant, by virtue of the *venditioni exponas* aforesaid, the written surrender of said land by Berry, and what subsequently transpired by the sheriff, acquired a *bona fide* lien on the land, thereby entitling it to be first paid out of the proceeds, is the vital question presented by this record.

By *article* 3, *section* 1, *of chapter* 36, 1 *volume Revised Statutes*, 474, a writ of *fieri facias* shall bind the estate of the defendant from the time the same is delivered to the proper officer to execute.

All executions are by law to be returnable to some rule day of the court, not under thirty nor over seventy days from the test. And it is made the duty of each court, by an order of record, to appoint a monthly return day of executions. (1 *vol. Rev. Stat.*, 473.) Sheriffs and other like officers are, by statute, made liable for

heavy penalties to plaintiffs for failing to return execu-
tions placed in their hands to the office from whence
they issued, for thirty days after. the return day of the
same, without a reasonable excuse therefor.  And they
are subject to a fine if they shall delay for an unrea-
sonable time to advertise property taken under execu-
tion for sale, and are, moreover, liable to the action of
the party aggrieved for damages.  (1 *Rev. Stat.*, 492–3.)

From the foregoing, it is apparent that the statutes
provide, as was said in *Owens vs. Patterson* (6 *B. M.*,
488)—" 1st. For the prompt return of all proceedings
under executions, and therefore for the publicity of every
act which can either give or continue the lien upon the
debtor's property ; 2d. That they provide and contem-
plate execution of the writ of *fieri facias* by the seizure
and sale of the debtor's estate, if necessary for the satis-
faction of the debt; and, 3d. That they place it in the
power of the creditors to coerce a performance of the
sheriff's duty in returning the writ and completing the
execution of its mandate—the result of all which is, no
secret lien is intended by the statutes to be given.   That
they intend to secure, by means of the execution, the just
fruits of a reasonable diligence; to provide for a creditor
who, in good faith, resorts to the legal remedy for the
coercion of his debt, and do not intend to furnish him
with means of deceiving others or enabling his debtor to
do so."

If the delivery of an execution into the hands of the
sheriff is followed up by a prompt levy of it on the prop-
erty of the defendant, a return of the fact and a sale
within reasonable and proper time ; or if, upon the
failure of the sheriff to discharge these duties, or any of
them, the plaintiff should, without unreasonable delay,
take steps to compel him to a performance of his duty,

no injury or injustice could result to others; for all who might be disposed to deal with the debtor could, by the exercise of ordinary care and diligence, ascertain his true condition, and, under " such circumstances, the law would justly impute a knowledge of such facts to all who would deal with him."

But so far from the proceedings in this case being such as to give the requisite publicity to the lien, whereby all might be affected with notice thereof, and the action under the execution prompt and without unreasonable delay, so as to keep up a continuity of the lien by regular proceedings, over three years elapsed from the date of the levy to the death of Berry, the defendant, during all of which time it does not appear that appellant made any attempt to satisfy the debt by coercing a sale of property or proceeding against the sheriff for a failure to perform his duty.

This long delay and inaction authorizes the presumption that some contract or agreement had been entered into between appellant and Berry, whereby indulgence was to be given to the latter to enable him from other sources to raise the means for the satisfaction of the debt and dispense with a sale of the property levied upon; and this presumption is strongly fortified by the fact that nine hundred and seventy-one dollars are credited as paid the 15th of March, 1864, when there does not appear to have been any execution in the sheriff's hands, and the amount certainly was not made by a sale of property by him.

This inaction for three years, without ever attempting to perfect the levy by a sale of the property, during all which time no process was in the sheriff's hands, from anything that appears in this record, was well calculated to conceal from the community the fact that there was a

levy, and those who may have known it at the time were authorized to conclude that the debt had been satisfied; at all events, such laches, so far as the rights of third parties are concerned, must be regarded as a waiver or an abandonment of the levy; but as against the debtor himself, for whose benefit the indulgence may be presumed to have been given, and by whom the delay was procured, the lien or power to sell should, perhaps, be regarded as still subsisting.

As, therefore, the ruling of the court below conforms to this view, the judgment is *affirmed*.