## HARMAN vs. MAY.

1.   EXECUTIONS.—*Estate of Mortgagee not subject to.*

The estate of a mortgagee in the mortgaged premises before foreclosure, is not subject to execution.

2.   MORTGAGE.— *When absolute deed is : Evidence.*

Wherever at the time of a sale the vendor is indebted to the purchaser and so continues after the sale, with a right to call for a reconveyance upon payment of the debt, a deed absolute upon

its face will be construed in a Court of Equity as a mortgage; and evidence written or oral, is admissible to show the real character of the transaction : but in the absence of fraud and impo‥ sition the proof must be clear and decisive.

3. CHANCERY JURISDICTION.—*To remove fraudulent obstructions to execution.*

When a levy is made upon land the title to which is in a fraudulent grantee, resort may be had to a bill in equity to perfect and clear the title.

4. EXECUTION.—*Lien of—duration after levy, indefinite.*

In this case, held that a delay to sell land for about twenty-six months after the levy did not displace the lien of the execution.

APPEAL from *Johnson* Circuit Court in chancery.

Hon. W. D. JACOWAY, Circuit Judge.

*Geo. L. Basham* for appellant.

The conveyance to Mrs. Withey, was a mortgage to secure a debt on her husband. Appellee by proper proceeding might have enforced the collection of his judgment out of that claim, but he failed to do so, and upon payment by Harman of the debt, a conveyance by Mrs. W. was necessary; from the fact that the deed was absolute on its face. If any fraud was perpetrated it was not by appellant.

But treating the conveyance as a deed, does the lien of the levy reach out beyond the judgment lien and affect property in the hands of third parties who purchased without knowledge. Silent liens are contrary to the spirit and policy of our laws, and are looked upon by the Courts unfavorably, especially after the lapse of years. See 18 *Ark.*, 309—315 ; 23 *Ib.*, 459—466; 15 *Ib.*, 268; 13 *Ib.*, 543.

*J. W. May, pro se.*

SMITH J.—May filed his bill in Chancery, alleging that he was a judgment creditor of H. R. Withers and had caused an execution to be levied on the 12th of Febru-

ary, 1879, upon certain lots in the town of Coal Hill, as his property: that on the 25th of January, 1879, while said judgment was in full force and a lien upon all of the real estate in Johnson County, in which the said debtor had any interest, Harman had conveyed the lots to the wife of Withers for a consideration which moved from the husband; that this conveyance was intended to defraud the creditors of Withers, who was insolvent; and that while the property was so subject to the plaintiff's judgment lien and after it had, in fact, been seized for the satisfaction of the husband's debts, Mrs. Withers had reconveyed it to Harman and he had afterwards sold and conveyed the same to Rogers.

The prayer was that all of said deeds might be set aside as fraudulent obstructions to the assertion of plaintiff's legal right and that the lots be subjected to the payment of plaintiff's judgment. Harman, Rogers, Withers and wife were made defendants and were served with process. The three last named failing to appear and defend, a decree *pro confesso* was entered against them.

Harmon answered that he owed Withers a fee of $250 for professional services as a lawyer and not having the present ability to pay, he sought to secure the same by executing to his wife a deed for the lots. He admits that the deed was made to the wife instead of the husband on account of the husband's insolvency; but avers that the transaction was in effect a mortgage, there being a parol understanding, which was afterwards carried out, that Mrs. Withers should reconvey to him when he paid the fee. He, therefore, denies that Withers had any such estate in the lots as was bound by the lien of a judgment or liable to be taken in execution. He also says that the subsequent deed to Rogers was a mere security for a debt.

Harman v. May.

The cause went to hearing upon the ⸝bill with its exhibits and the answer; no depositions being taken on either side. The decree was for the plaintiff.

The estate of a mortgagee before foreclosure is not the subject of execution. *State vs. Lawson,* 6 *Ark.,* 269, *Trapnall v. State Bank,* 18 *Id.* 53.

1. EXECU-
TION:
Morgagee's
estate not
subject to.

And wherever at the time of sale a vendor is indebted to the purchaser and continues to be indebted after the sale, with a right to call for a reconveyene upon payment of the debt, a deed absolute on its face will be construed by a Court of Equity as a mortgage. *Scott v. Henry,* 13 *Ark.,,* 112; *Farris v. King,* 27, *Id.* 404; *Rogers v. Vaughn,* 31 *Id.* 62; *Hughes v. Edwards,* 9 *Wheat,* 489; *Robinson v. Willoughby,* 65 *N. C.,* 520; *White & Tudor's Lead, Cas. in Eq;* 4th *Am. Ed., vol.* 2, *Pt.* 2, 1983. (Note to the case of Howard v. Harris.)

2. MORT-
GAGE:
When ab-
solute con-
veyance is.

Evidence, written or oral, is admissible to show the real character of the transaction *Porter v. Clements,* 3 *Ark.,* 364; *Johnson's Ex'r v. Clark,* 5 *Ark.,* 321. *Blakemore v. Bymeside,* 7 *Id.* 505. *Russell v. Southard,* 12 *How.* 139. *Peugh v. Davis,* 96 *U. S.,* 332.

But in the absence of fraud and imposition the proof must be clear and decisive. *William v. Cheatham,* 19 *Ark.,* 278. *Trieber v. Andrews,* 31 *Id.,* 163. *Jones v. Jones* 23 *Ark.,* 212.

Here are no proofs; only an answer tendering an issue. And without countervailing evidence the answer contains sufficient admissions to support the decree; provided May has not slept too long between the date of his levy and the filing of his bill to uncover the property.

The judgment was recovered before a justice of the peace. After the issue of an execution and a return of "nulla bona," a transcript of the judgment was filed, October 20th, 1877, in the office of the clerk of the Cir⸝

cuit Court of the county, where it was duly docketed. The effect of this was to make it a lien upon all of Withers real estate in Johnson County, the same as if it had been rendered by the Circuit Court. Gantt's Digest, Secs. 3788–90.

On the 25th of January, 1879, Harman conveyed to Mrs. Withers, by deed absolute on its face. The execution was levied February 10, 1879, during the life of the judgment lien. On the 6th of November, 1879, Mrs. Withers reconveyed to Harman and on the 31st of December, 1880, Harman conveyed to Rogers. The present bill was filed April 6, 1881, after the expiration of the judgment lien. May must, therefore, rely on the lien springing from the levy of his execution, since it is well settled that a levy upon land within three years from the date of a judgment will not prolong the judgment lien for a single day beyond three years. *Trapnall v. Richardson*, 13 *Ark.*, 543, overruling *Trustees v. Watson*, 13 *Id.*, 74. *Pettit v. Johnson*, 15 *Ark.*, 55. *Lawson v. Jordan*, 19 *Id.*, 297.

The bill charges and the answer of Harman admits, that the conveyance to Rogers was a mere security for a debt. And as Rogers did not defend the suit, we may take the allegation for true and that the debt has been paid, thus laying his deed out of consideration and leaving the contest between Harman and May.

*In Trapnall v. Richardson, ubi supra.* Chief Justice Watkins said : "It is obviously the policy of our system of laws, to make the title to land depend upon matter of record, and not upon act *in pais* or resting in parol. The registry system is almost universal. Deeds, mortgages, mechanics liens, settlements of separate estates on the wife, and all incumbrances affecting the title to land, are required to be recorded in the county where the land

Harman v. May.

lies, else they will not avail as against innocent purcha-
sers.  So judgments and decrees are  required to be con-
densed into a judgment docket,  to facilitate the examin-
ation of incumbrances, and open to  the inspection of all
persons interested in the title to the land.   The only ex-
ceptions are, when the execution is levied on land to which
the  lien of  the  judgment does not extend, e. q., where
the  execution is sent  to  another  county, or  when the
lien has been determined, i. e.,  expired without revival,
and in  such case the execution is the lien from the time it
comes to  the  officer's hands,  just as it is  on personal
property, which is  never bound  by the lien of the judg-
ment and would  probably have  to be governed by the
same rules as apply to personal property."

In State Bank v. Etter, 15 Ark., 268, the Bank had re-
covered a judgment in  Pulaski Circuit Court,  and  had
sued out execution, directed to the Sheriff of Hempstead
County, which was levied  upon Cocke's lands, there sit-
uate, but returned without sale by direction of the plain-
tiff.   A few days after the levy,  Cocke died and  his ad-
ministrator afterwards  sold the  lands, under authority
from the Probate Court, to a  purchaser who knew they
had been  levied upon by the Sheriff.   Two and  a half
years after the levy, the Bank sued out a writ of venditioni
exponas to sell the  lands.   And upon a  bill by the pur-
chaser at  administrator's sale, to  enjoin  the sale under
the execution,  it was held  that  the  judgment creditor
could  not pursue  his lien  without a  revival of  the
judgment.   This was placed upon  the double ground of
the necessity of a revivor against the legal representative
of the deceased before process could issue for satisfaction
of the judgment and of  unwarranted  interference with
the  due course of  administration.   Upon  the precise
question before us,  Mr.  Justice  Walker  said:   " As

regards these, (judgments) the statute has limited the coutinuance of the lien; but with regard to execution liens, the statute is silent, and the Court must necessarily determine, from delay and other circumstances whether the lien has been revived or abandoned."

*In Slocomb v. Blackburn,* 18 *Ark.,* 309, the levy was upon slaves. The defendant gave a delivery bond, which was returned forfeited, but no judgment was taken on the bond. The plaintiff lay by for more than five years, when he sued out a *fieri facias,* taking no notice of the previous levy. After the lapse of more than seven years from the return of the delivery bond, and after the death of the defendant, the plaintiff filed a bill in equity, against a party in possession of the slaves under claim of title, to enforce the specific lien of the levy, without showing any diligence or sufficient excuse for the delay. And it was held the lien was displaced. English C. J. said : "Our law does not favor the continuation of such liens for an unreasonable time. . . Perhaps, upon principle, when goods are levied on, a delivery bond taken and returned forfeited at the return term, and the plaintiff permits the next ensuing term of the Court to pass without taking out process to enforce the lien of the levy, he might, by such neglect, lose his lien as against intervening rights of other creditors or purchasers."

*In Patterson v. Fowler,* 23 *Ark.,* 459, the judgment lien had expired, and there had been a delay of nearly four years, between the return of the execution, under which the lands were levied on and the suing out of the *Vend. Exp.,* during all which time no step was taken to enforce the levy and no excuse given for delay. And this Court decided that it was too late to cut off the intervening rights of a more diligent creditor.

*In Barber v. Peay,* 31 *Ark.,* 392, an execution had been

levied in the latter part of the year, 1870, on land, but returned without sale by direction of the plaintiff's attorney. The judgment lien was kept alive during the debtors life and after his death was revived against his administrators In July 1875, a *venditioni exponas* issued; and upon a motion to recall and quash it, this Court held that the specific lien fixed on the land by the levy, had not been lost by laches.

*In Owens v. Patterson*, 6 *B., Mon.*, 488, a fi. fa. was levied upon land, but the sheriff made no return for nearly three years. Seventeen months after the levy, the defendents in execution sold and conveyed the land to a *bona fide* purchaser who had no knowledge of the levy. At the end of three years, the execution was returned, a *ven. ex.* issued and the land sold and conveyed to the plaintiff in execution. And it was ruled by the Court of Appeals of Kentucky, that the purchase from the defendant in execution was not overreached by the subsequent sale and conveyance under the *ven. ex.* But this was placed upon the ground that the execution had not been promptly returned, so as to give publicity to the fact of seizure and affect intermeddlers with notice. The creditor, had in effect concealed his lien,

*In Deposit Bank v. Berry*, 2 *Bush*, 236, inaction for three years without attempting to perfect a levy by sale of the property, was held calculated to conceal from the community the fact that there was a levy and an implied waiver or abandonment of the lien.

*In Ruker v. Womack*, 55 *Ga.*, 399, it was held that neglect for four years to enforce the levy, when there was no obstruction in the way of its enforcement, the land being meantime in possession of a *bona fide* purchaser for value, was sufficient to discharge the lien.

*In Porter v. Mariner*, 50 *Mo.*, 364, a sale made in 1865, based upon a levy made in 1861, was upheld.

The common law is that after a levy, the writ may be returned on the return day and the levy enforced by a *venditioni exponas*.    *Webster v. Wolbridge*, 3 *Dillon*, 74.

And a levy preserves a lien upon the land, though no *scire facias* be had to revive the judgment; *Brown v. Campbell*. 1 *Watts*, 41.

Under, *see* 2630 *Gantt's Digest*, which subjects to seizure and sale on execution, all real estate whereof the defendant, or any person for his use, was seized at the rendition of the judgment or afterwards, perhaps the trust, which resulted to Withers from the payment of the purchase-money, might have been reached by his creditors through an execution sale; although many authorities hold that when a debtor has fraudulently bought property and had the title taken in the name of another, the aid of equity must be sought. *Freeman on Executions*, *ss.* 136.    *Rankin v. Harper*, 23 *Mo.*, 579.    *Dunnica v. Coy*, 24 *Id.*, 167.

But undoubtedly where a levy is made upon land, the title of which is in a fraudulent grantee, resort may be had to a bill in equity to perfect and clear the title. *McLean v. Johnson*, 43, *vt.* 48.

And this Court, in *Sale v. McLane*, 29 *Ark*, 612, indicated that it was the better practice to settle the question of title before sale.

Under the circumstances of the present case, we do not consider the plaintiff's delay for a period of about twenty-six months to file his bill so unreasonable as to defeat the lien he had acquired by his levy.

Affirmed.