## BERARD *v.* FITZPATRICK.

### Opinion delivered May 20, 1918.

1. MORTGAGES—INSTRUMENT GIVEN TO SECURE A DEBT—OPTION TO PURCHASE.—An instrument executed for the purpose of securing the payment of money, is in effect a mortgage, whatever its form may be.

2. MORTGAGE—OPTION TO PURCHASE.—A. loaned money to B., taking a mortgage upon certain lands and also an option to purchase the said lands. B. repaid the loan at maturity. *Held,* under the evidence that the option to purchase was given only as additional security for the loan, and could be exercised only upon default by B. in the repayment of the loan.

Appeal from Phillips Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Moore & Vineyard, J. G. Burke,* and *Fink & Dinning,* for appellant.

1. Even if we concede that the defense that the option contract was executed only as additional security and was discharged by payment of the mortgage debt, yet the court was not warranted from the testimony in making such a finding. The contract is plain and unambiguous, clear and certain, and parol testimony was not admissible to vary or contradict it. 4 Ark. 183; 15 *Id.* 543; 24 *Id.* 210; 29 *Id.* 544; 35 *Id.* 156; 24 *Id.* 269; 25 *Id.* 191; *Ib.* 309; 99 *Id.* 218; 105 *Id.* 50.

The testimony was wholly insufficient to overturn the written contract. 82 Ark. 569; 71 *Id.* 618; 75 *Id.* 75; 81 *Id.* 425; 85 *Id.* 64; 102 *Id.* 575. All the testimony of appellee was incompetent, but if competent it did not overturn the written agreements.

2. There was a consideration for the contract over and above the security for the loan. The burden of showing want of consideration was upon appellee. 33 Ark.

97; 8 *Id.* 131; 35 *Id.* 279; 28 *Id.* 550; 52 *Id.* 234; 17 *Id.* 9; 21 *Id.* 69; 1 *Id.* 66. But the consideration is not material as the offer to sell was accepted by Berard before appellee withdrew or made any effort to do so. Elliott on Cont. 33; 144 U. S. 394; 84 *Id.* 385; 67 L. R. A. 571; 39 Cyc. 1190, 1192. Berard unconditionally accepted the offer within the time and was entitled to specific performance.

3. There is no allegation of fraud or overreaching by appellants. The findings of the chancellor are not sustained by the evidence. Fitzpatrick did not rely on Lilly's advice or suggestions, nor is the option contract unfair or unjust. No fraud is shown.

*R. J. Williams,* for appellee.

1. The option was only security for a loan and on payment it became null and void. There was no consideration to support it. It was usurious and void. It was void by reason of bad faith, imposition and fraudulent and unconscionable conduct. All these issues were raised and taken together raise the issue that the option contract expired upon the payment of the debt or loan. Usury is shown if the question was not passed on by the chancellor. There was not merely a mistake in calculation. Kirby's Dig. § 5381.

2. Parol evidence was admissible to show what the real contract was. 7 Ark. 505-8; 5 *Id.* 321; 40 *Id.* 146. The chancellor found that the option was a mere security for the debt. When paid it was no longer binding. See also 38 Ark. 207; 27 U. S. (L. ed.) 910.

3. There was bad faith, imposition and fraudulent conduct. Lilly was the agent of Fitzpatrick and Berard knew it, and he was interested in the profits. 26 Ark. 446; 28 *Id.* 292; 42 *Id.* 28; 90 *Id.* 305. He was attempting to serve two masters. As agent of appellee it was his duty to obtain the best terms possible for his principal. He knew a fraud was being perpetrated. An agent must not assume relations antagonistic to his principal. Mechem on Ag. § § 454-5.

4. The amount of the consideration, the absence of undue advantage and other similar features are immaterial. Nothing will defeat principal's right or remedy except confirmation after full knowledge. 2 Pom. Eq. Jur. § 959; 62 Ark. 601; Adams' Eq. 367. An agent can not speculate in the subject matter of his agency; good faith is required. 90 Ark. 305.

5. The option was withdrawn.

SMITH, J. This action was brought by the appellant for the purpose of enforcing the specific performance of a certain option contract entered into between the appellant and appellee for the sale of certain real estate in Phillips County. The lands described in the complaint were advertised to be sold on January 21, 1916, in satisfaction of a mortgage thereon in favor of a Mrs. Stone. For the purpose of preventing this sale, appellee applied to O. R. Lilly, the agent of the Equitable Security Company, for a loan for the purpose of discharging the indebtedness to Mrs. Stone. It was arranged that a loan of five thousand dollars would be made by the loan company, provided same should be secured by a first lien on the land in question. It was ascertained that the sum of five thousand dollars would not satisfy the principal and interest due Mrs. Stone, and the loan company refused to lend any larger amount. Appellee then applied to appellant for a loan of five hundred dollars and agreed to execute a second deed of trust upon the same land for the purpose of securing the payment of that amount.

Appellant testified that he declined to consider the matter for the reason that he did not care to have any business transactions with appellee. That appellee made several efforts to secure the money from other sources but was unable to do so, and it was finally agreed that appellant and J. C. Meyers and A. G. Burke would lend appellee the sum of five hundred dollars on condition that appellee give them an option contract for the purchase of the property. It was later found that the sum of five hundred dollars was not sufficient to discharge the old in-

debtedness and the amount was finally fixed at seven hundred and fifty dollars, for which amount appellee executed his note and deed of trust to appellant and Meyers and Burke. From funds arising from these two deeds of trust the indebtedness to Mrs. Stone was discharged and the foreclosure proceedings abated. Appellee executed and delivered to appellant the option contract and also executed a warranty deed and placed same with the Security Bank & Trust Company, of Helena. So far the facts are undisputed; but thereafter the testimony is sharply conflicting.

The principal and controlling question of fact in the case is, For what purpose were the option contract and deed executed? Appellant testified that these instruments were what they purported to be and that their execution furnished the real consideration for the transaction between the parties. The option contract recited that for the consideration of $9,500, of which $10 was cash in hand paid, an option to purchase the land described was given until January 1, 1917. Of the sum recited $5,000 was to be paid by assuming the mortgage to the loan company and the balance was to be paid upon exercising the option.

In appellants' behalf there was testimony to the effect that the payees in the $750 note were not in the business of lending money, but, on the contrary, borrowed the money which they loaned to appellee. The testimony of appellant supported the allegations of his complaint. Other testimony in his behalf may be summarized as follows: Soloman, the cashier of the bank in which the deed and option contract had been deposited, testified that the sum named in the option contract had been tendered appellee before the expiration of the option. R. B. Campbell testified that in the fall of 1915 or the early part of 1916 appellee listed the land with him for sale at $9,600, which was a fair value of the land at that time, but that he could not sell the land for a sufficient sum to net appellee the price fixed. J. C. Meyers testified that he was one of the owners of the abstract company which

had made the abstract for appellee, and that appellee's application for the additional loan was turned down by his company, and that appellant refused to entertain the application unless the option contract was given, but that he was not present when the contract between appellant and appellee was finally consummated. Upon being recalled, he testified that appellee said he was willing to give an option to sell at the price the land was worth, but that he did not want the land sold under foreclosure for the reason that it would not bring its value if sold in that manner.

O. R. Lilly testified that he was engaged in the real estate business and in making farm loans, and that appellee had listed the land with him for sale, but that he had been unable to sell it in January, 1916, while it was so listed, for $9,000. Lands had since that date increased twenty-five per cent. in value. That in applying to appellant for the additional loan he was acting as the agent of appellee and was interested in negotiating it for the reason that he would otherwise lose his commission on the loan which the loan company had agreed to make. That the loan was not closed until the option contract was signed, and that he prepared a collateral agreement at the time, which provided that if appellant elected to exercise his option prior to August 1, 1916, he should have the rents thereon. He admitted that he had a contract with appellant by which they were to divide equally any profits made by the exercise of the option and a resale of the land.

Appellee and his father gave testimony of substantially identical purport as follows: That the contract was usurious, because interest was contracted for at ten per cent. for a longer time than the money was loaned. The court below made no finding, however, on this issue. That Lilly was appellee's agent, and it was not known that Lilly had any interest in the option contract. That Lilly had assured appellee that the additional loan had been ·negotiated with appellants and that when it was consummated the loan from the loan company would also

be consummated and the property saved from the fore-closure sale and that appellee relied upon this represen-tation. That the land was advertised for sale on January 21, 1916, and on January 19 Lilly told him the option con-tract was required as an additional security for the loan, and it was then executed for that purpose. Appellee paid on the 19th the newspaper fee for advertising the land and secured from the trustee who had advertised the land an extension of five days in which to pay the debt for which the land had been advertised. These witnesses testified further that it was explained to them that the option contract was required as additional security and to save the expense of a foreclosure proceeding in the event the appellee did not pay the new debt when it ma-tured, and these witnesses gave testimony of the most unequivocal character that the option contract was in-tended to be and was in fact only given by way of addi-tional security.

The loan to appellee was paid at its maturity and upon appellee's refusal to consent to the delivery of the deed to appellant this suit was brought to enforce the option contract. The payment by appellee was made about December 1, 1916, and appellant's election to exer-cise his alleged option was made about December 15, 1916.

The court made the following findings of fact:

"1. The court finds that the option contract was in-tended only as an additional security to the loan of $750, and that the defendant about the first day of December, 1916, after having paid the mortgage indebtedness, with-drew the option:

"2. The court further finds that there was no con-sideration moving from the plaintiff to the defendant for said option, over and beyond a mere matter of security for the loan evidenced by the note for $750.

"3. The court further finds that O. R. Lilly, while acting as agent of the defendant, Fitzpatrick, was inter-ested in a pecuniary way in the procurement of the option contract, and that his action in connection with the exe-

cution of the same was against the interests of his principal, L. A. Fitzpatrick, Jr., and contrary to law.''

A decree was entered in accordance with these findings, and this appeal has been duly prosecuted.

Appellee concedes that he knew the nature and character of the option contract when he signed it, and it is said, therefore, that the testimony must be clear and convincing that appellant was not to have the option to buy upon the terms and conditions there stated. It is conceded that this is the law, but the majority do not think that it follows from that concession that the decree below must be reversed. It is not required that the testimony be uncontradicted. *James et al.* v. *Furr et al.,* 126 Ark. 251, 190 S. W. 444. Indeed, in suits of this character the testimony is quite frequently in sharp conflict, but the relief prayed for is not refused on that account if, from the testimony as a whole, it clearly and certainly appears that the writing in question was not to have the effect which its terms ordinarily import. There is no question here but that an option was given appellant to buy the land. But the question is whether this option was absolute and unconditional, or was given as additional security for the loan of money made and to be effective upon default made in the repayment of this money.

Appellee and his father testified that it was explained to them by Lilly, who admitted having a half interest in the prospective profits of this option, that the option contract was desired to save the expense of foreclosure in the event of default. If this testimony is accepted as true, then clearly the instrument is a mortgage, for it is thoroughly well settled by numerous decisions of this court that an instrument executed for the purpose of securing the payment of money is, in fact, a mortgage, whatever its form may be. It therefore follows that, if this option was not to be effective unless appellees defaulted in the payment of his loan, the finding of the court below should be affirmed, and as the majority so interpret the testimony it will be so ordered.