BREWER *v.* YANCEY.

Opinion delivered May 28, 1923.

1. MORTGAGES—DEED ABSOLUTE IN FORM—EVIDENCE.—A conveyance absolute in form is presumed to be a deed, and not a mortgage, and to overcome the presumption, in the absence of fraud, the evidence must be clear, unequivocal and convincing.

2. MORTGAGES—DEED ABSOLUTE IN FORM.—Whether a deed absolute in form is a mortgage is determined by ascertaining whether it was given to secure a debt.

3. MORTGAGES—DEED ABSOLUTE IN FORM—EVIDENCE.—Evidence *held* to establish that a deed absolute in form was intended as a mortgage.

Appeal from Conway Chancery Court; *W. E. Atkinson*, Chancellor; reversed.

*B. T. Coulter* and *W. R. McHaney*, for appellants.

The instrument was given, conveyance made, to secure a debt, and was in effect only a mortgage. The grantor was ignorant and illiterate, and the instrument was not read over to him. 30 Atl. 672; 5 Neb. 247; 88 N. Y. Supp. 385. Brewer relied on Sutton confidently to attend to his business properly for him. 91 N. Y. S. 917; 26 Ark. 610; 85 Ark. 363; 101 Ark. 558. The bank's contention that the conveyance was made to satisfy balance due of Brewer's mortgage debt will be carefully scrutinized. 192 Ill. App. 318. Inadequacy of price also entitled to great weight in showing deed intended as

mortgage. 193 S. W. 264; 86 Ark. 460. The test is the continued existence of the debt it was given to secure. 88 Ark. 229; 100 Pac. 1031; 114 Pac. 224. Further advances were made on the strength of the conveyance, and Brewer was allowed to continue long in possession of the lands without notice that the bank claimed them. The written evidence shows that the conveyance was not an absolute one. 13 Ark. 112; 174 S. W. 1154. Other cases in point. 78 Ark. 527; 88 Ark. 336; 174 S. W. 1154; 193 S. W. 264; 202 S. W. 821. The court erred in not holding the instrument a mortgage, and the decree should be reversed.

*Calvin Sellers,* for appellee bank.

The only question is whether or not the deed executed to the Bank of Plumerville should be held to be a mortgage. The grantor had sufficient mental capacity to execute such an instrument. The deed is in proper form, and has been of record in the recorder's office since March 6, 1911, and is presumed to be a deed. The proof is not sufficient to show instrument was a mortgage. 85 Ark. 363 and other cases cited by appellants have no application to the facts of this case. If the deed was invalid, Brewer, by accepting a bond for title thereafter for part of the lands, permitting himself to be sued thereon and making default and permitting a decree of foreclosure of the bond rendered against him, ratified the deed. 29 So. 385; 48 Pac. 68; 87 N. W. 748; 16 Kan. 312; 69 N. E. 542; 92 N. Y. 601. To overcome the presumption that a conveyance absolute in form is a deed, in the absence of fraud, the evidence must be clear, unequivocal and convincing. 143 Ark. 607; 132 Ark. 349; 75 Ark. 551; 40 Ark. 417; 88 Ark. 297; 96 Ark. 564; 105 Ark. 314; 106 Ark. 587; 148 Ark. 654; 148 Ark. 669.

*M. H. Dean,* for appellees.

J. R. Yancey was a *bona fide* purchaser of the lands and entitled to protection as such. Before he purchased the lands from the bank, he was informed by Brewer that the lands belonged to the bank, and he was looking after the timber for the bank. The record showed he had con-

veyed the lands by warranty deed. 28 S. W. (Tex.) 356; 49 Ark. 207; 36 Iowa 664; 50 S. E. (Ga.) 382; 90 S. W. (Tex.) 431; 23 S. W. 257; 108 Ark. 490; note 13 L. R. A. (N. S.) 68.

Sam M. Yancey not an innocent purchaser, not having paid whole consideration. 44 Ark. 48; 49 Ark. 207, cited by appellee, was overruled in 54 Ark. 273. Sam M. Yancey pleads that his vendor, J. R. Yancey, was an innocent purchaser. J. R. admits the Brewers were in possession when he purchased, and claiming an interest in the lands. Eng. & Am. Enc. 513; 40 W. Va. 540; 54 Ark. 273.

HUMPHREYS, J. On February 21, 1910, William Brewer was the owner of a 627-acre tract of land in Conway County, Arkansas. He resided with his family upon the land, four hundred acres being under fence, and three hundred acres thereof in cultivation. Five sets of improvements were upon the property. Brewer was a negro of little or no education, but through his own management and industry had accumulated this large tract of land. In carrying on his business he became indebted to A. R. Bowdre & Company in the sum of $2,614.12, as well as to the Bank of Plumerville. The bank took over the indebtedness of A. R. Bowdre & Company, and, in order to secure that and the amount due it, took a mortgage from Brewer for $4,500 on said date, February 1, 1910, covering the entire tract of land. On the 4th day of March, 1911, William Brewer and his wife, Emma, whom he had married after the execution of said mortgage, executed a warranty deed for these lands to the Bank of Plumerville for a recited consideration of $4,000. The main issue involved in this suit is whether said warranty deed, absolute upon its face, was in fact a mortgage to secure the balance due, covered by the mortgage given on February 21, 1910. Two other issues, incidental to the main issue, were presented by the pleadings, the first being whether M. C. McKindra and Sam M. Yancey are innocent purchasers of certain

parts of the tract of land, purchased respectively by them, and the second being the amount of the indebtedness secured by the deed, if in fact a mortgage. We incorporate herein an excerpt from the narrative of appellant giving a succinct statement of the proceedings and substance of the various pleadings presenting the issues in the case. It is as follows:

"This suit had its origin in the circuit court of Conway County. On January 17, 1918, J. R. Yancey and the Bank of Plumerville joined in a suit in unlawful detainer against Alonzo and Elijah Brewer, alleging ownership in Yancey, by purchase from the bank, of the SW¼ and the south 2/3 of the SE¼ of sec. 26, of the lands in dispute, and praying for possession. The Brewers were ousted. They answered denying the allegations of the complaint. This suit was No. 1493. On February 28, 1918, the bank filed an attachment suit in the court of C. E. Millen, a justice of the peace, against Elijah Brewer, to collect certain rents from him for a part of these lands. This cause was appealed to the circuit court, and became cause No. 1507. On October 7, 1918, William Brewer and his sons, Charlie and William Jr., filed in cause No. 1493 an intervention in the nature of a bill of discovery, asking for a disclosure of the rights under which plaintiffs claimed title and for a transfer of the cause to equity. On November 21, 1918, the circuit court made an order consolidating the two causes and transferring them to equity, where they became cause No. 1917, which is the case at bar. On December 30, 1919, after certain discoveries, and by permission of the court, the original defendants, Alonzo and Elijah Brewer, joined their father, William, and their two brothers, Charlie and William Jr., in an amended intervention and cross-complaint, alleging ownership of the lands in dispute, together with the remaining portion of the entire 627-acre tract, making M. C. McKindra, who had purchased from the bank the SW¼ of sec. 25, a cross-defendant, praying for a reformation of the instru-

ment of March 4, 1911, and for Yancey and McKindra
to be declared purchasers of the parts of these lands
claimed by them with notice of the rights of the Brewers.
With all these parties properly in court, the cause was
heard on August 14, 1920, the instrument of March 4,
1911, was declared to be a mortgage, and Yancey and
McKindra were declared to be purchasers of the parts
of the lands claimed by them with notice of the rights of
the Brewers. On September 11, 1920, this decree was
vacated on motion of Sam M. Yancey, who filed an inter-
vention alleging ownership by purchase from J. R.
Yancey of the lands described in the original complaint.
On September 20, 1920, the decree of August 14th was
reentered, reserving to Sam M. Yancey his rights of
intervention. On this same date E. H. Coulter and T. M.
Williams filed their interplea in the cause, alleging that
Coulter had become the owner of the south 2/3 of the
SE¼ of sec. 26, by purchase from William Brewer, and
that he had conveyed the same to Williams. On January
6, 1921, on motion of plaintiffs and Sam M. Yancey, the
decree of August 14 and September 30 was again
vacated. On a rehearing of the cause on November 30,
1921, the court held the instrument of March 4, 1911, to
be a deed absolute, and, in keeping with that finding,
granted other relief. On that same date a motion was
filed to vacate the decree, and, in order to save the rights
of the parties over to the ensuing term, the decree was
vacated for the purpose of hearing the motion at a later
date. An order was made on April 19, 1922, overruling
this motion and reentering the decree of November 30,
1921, as of the date of April 19, 1922. From this order
and decree the Brewers, Coulter and Williams perfect
this appeal.

The trial court did not have occasion to decide
either incidental issue. It was admitted that on Novem-
ber 30, 1917, the Bank of Plumerville executed and de-
livered to J. R. Yancey a deed to 267 acres of said tract,
which he conveyed to Sam M. Yancey on December 23,

1919; and that said bank conveyed 160 acres of said tract to M. C. McKindra on January 28, 1919. After finding that the deed executed by William Brewer and Emma Brewer, on March 4, 1911, was executed and delivered as a deed and not as a mortgage, it follows that Yancey and McKindra were entitled to the lands conveyed to each by the bank, and that it was unnecessary to state an account between the bank and William Brewer. The court therefore decreed the lands to the Bank of Plumerville, Sam M. Yancey, and M. C. McKindra, according to their several interests as shown by their deeds, and dismissed the suits of appellants for the want of equity.

Appellants contend for a reversal of the decree upon the ground that the testimony shows the deed was given to secure the balance due on the preexisting mortgage indebtedness. Testimony was introduced *pro* and *con* as to the capacity of William Brewer to execute the instrument in question, and as to whether he was induced to execute it through undue influence. Appellant does not now contend that the evidence is sufficient to show incapacity on the part of William Brewer, and, after reading the testimony, we are convinced that he executed the deed of his own free will and without being unduly influenced by the bank's representative, D. F. Sutton. The testimony does not support the contention of appellant that a fraud was practiced upon William Brewer and his wife, by deception or otherwise, to obtain their signatures to the instrument in question. While of opinion that no fraud was practiced upon William Brewer by Sutton in obtaining the deed, we are convinced, after carefully reading the testimony, that the instrument was intended by the parties, at the time of its execution, as a mortgage, and not a deed. In arriving at this conclusion we are mindful of the rule that "a conveyance absolute in form is presumed to be a deed, and to overcome the presumption, in the absence of fraud, the evidence must be clear, unequivocal and convincing." *Snell* v. *White*, 132 Ark. 349; *Henry* v. *Henry*, 143 Ark.

607. The character of the instrument in cases of this kind is determined by ascertaining whether it was given to secure a debt. If given to secure a debt, the instrument is a mortgage, although a deed absolute on its face. *Gates* v. *McPeace,* 106 Ark. 587. In ascertaining the character of the instrument in the instant case, little aid is afforded by the parol testimony of the witnesses introduced by the parties to the action, for the testimony of the witnesses on each side is in sharp conflict. It would extend this opinion to unusual length to set out the testimony of each witness, even in substance. Suffice it to say that the witnesses introduced by appellant testified that the instrument was intended as a mortgage, and that William Brewer remained in possession until ousted therefrom in this litigation, renting out a large part thereof to tenants, who paid the rent to the bank on the indebtedness of Brewer, and that he paid the net proceeds of the lands he cultivated to the bank upon his indebtedness; and that the witnesses introduced by appellees testified that William Brewer and all others who occupied the land after the execution of said deed occupied same as tenants of the bank and paid rent to it as the exclusive owner thereof. Notwithstanding the conflict in testimony, certain facts are revealed by the record which cannot be reconciled upon any other theory than that the instrument was executed and intended as a security. There was a preexisting mortgage debt at the time the deed was executed. The debt had not increased to an amount equal to or in excess of the value of the land. In fact, according to the face of the two instruments, the mortgage indebtedness had been reduced from $4,500 to $4,000. No urgent necessity appeared for selling the land, especially at a great sacrifice. According to the decided weight of the testimony, the land was worth a great deal more than the consideration expressed in the deed. The deed expressed the correct amount of the existing indebtedness. For more than eleven months after the deed was executed and recorded, the notes of

William Brewer, evidencing his indebtedness to the bank, were carried on the books of the bank as bank assets. On December 27, 1911, after the execution of the deed on March 4, 1911, the bank, by its cashier, Sutton, who had procured the deed in question from Brewer, wrote the following letter to him:

"Plumerville, Ark., Dec. 27, 1911.

"William Brewer, Esq., Plumerville, Ark.

"Dear sir: It will soon be time for people to want to begin to make arrangements so as to prepare to farm, and in view of that fact it would be a good idea for you to come down within the next week or so, so we may have an understanding with you about renewing your land debt. If you can come soon, kindly do not come on Saturday or Monday, as those are the most busy days we have, and it is generally that we are croweded on those days.

"Yours truly,

"Bank of Plumerville,

"B. F. Sutton."

At the time the letter was written William Brewer owed no other land debt to the bank except the notes evidencing the mortgage indebtedness, which were carried' upon the books as an asset of the bank, after the execution of the deed in question. Appellee suggests that this letter had reference to a land indebtedness growing out of the execution of a bond for title to 107 acres of land which the bank sold back to Brewer for $1,800. According to the bank's testimony, the bond for title referred to was not executed until February 14, 1912, some time after the letter was written. A. J. Nesbett, who succeeded Sutton as cashier of the bank in January, 1915, testified that he found a copy of a title bond for 107 acres covering Brewer's home place, which the bank had executed to William Brewer for $1,800, and that a foreclosure proceeding on the bond was brought and prosecuted to a conclusion in the chancery court of said county against William Brewer. William Brewer denied buying his

home place back from the bank, or that a bond was executed to him for same by the bank, or that he executed notes to the bank in the sum of $1,800 to pay for same. He testified that when summons was served upon him in the foreclosure proceding, he and his two sons went to Mr. Nesbett about the matter; that they were disturbed, and Mr. Nesbett told them "to just go ahead, and he would make it all right." Mr. Nesbett denied making any statement concerning the suit.

We think the offer in the Sutton letter to renew the land debt referred to the mortgage indebtedness and not to the title bond indebtedness, which, according to the bank's own statement, was not executed for several months after the letter was written. We also think the letter, together with the fact that the mortgage indebtedness was carried on the bank books as an asset and not canceled off until Feburary 14, 1912, is proof conclusive that the deed in question was given to secure the mortgage indebtedness.

It was agreed between the parties at the time this cause was submited to the chancellor that he should try and determine the question only of whether the deed of date March 4, 1911, was intended as a deed or mortgage, and, if a mortgage, to fix the amount of the indebtedness due from William Brewer to the Bank of Plumerville. The decree rendered by the chancellor contains the following recital:

"It appears from the pleadings and proofs that the issues to be determined are whether or not the deed executed by William Brewer and Emma Brewer, his wife, on March 4, 1911, and conveying the lands as mentioned above, should be held to have been executed and delivered as a deed, or as a mortgage to secure indebtedness due the Bank of Plumerville; and, if a mortgage, to fix the amount of the indebtedness." In keeping with this understanding, when appellants filed their original abstract and brief, they did not abstract any evidence relating to the issue of whether M. C. McKindra and Sam M.

Yancey were innocent purchasers of certain parts of the. land purchased by them out of the 627-acre tract in controversy. M. C. McKindra and Sam M. Yancey later filed an abstract and brief upon the issue of whether or not they were innocent purchasers of certain parcels of said tract. In view of the fact that this issue was not tried and determined by the chancellor, and perhaps not fully developed, and the further fact that the decree of the trial court must be reversed, we have concluded to remand the cause in order that the issue as to whether McKindra and Yancey were innocent purchasers may be more fully developed and first determined by the trial court. We also think it more practical for the trial court to state an account, or appoint a master to do so, than to attempt it ourselves in the present state of the record.

The decree of the court is therefore reversed, and the cause is remanded, with directions to the trial court to render a decree to the effect that the deed in question is, in fact, a mortgage; to determine whether M. C. McKindra and Sam M. Yancey are innocent purchasers of the particular parcels of land purchased by them out of the 627-acre tract in controversy, and to state an account between William Brewer and the Bank of Plumerville, with permission to the parties to adduce additional testimony, if desired, upon the undecided issues.