## MATTHEWS *v.* STEVENS.

Opinion delivered March 10, 1924.

1. MORTGAGES—DEED ABSOLUTE AS MORTGAGE.—Where a vendor of land at the time of sale is indebted to the purchaser, and continues so after the sale, with a right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be considered a mortgage.

2. MORTGAGES—DEED ABSOLUTE—EVIDENCE.—That a deed absolute on its face was intended as a mortgage must be established by clear, satisfactory and convincing evidence.

3. MORTGAGES—USE OF WORD "REDEEM."—The use of the word "redeem" in an agreement between the vendor and purchaser of land reserving to the vendor the right to redeem before a certain date, though the deed was absolute, *held* to mean the right to repurchase, where it was shown that there was no valid debt owing to the purchaser from the vendor.

4. MORTGAGES—EFFECT OF AGREEMENT TO REPURCHASE.— An agreement between the vendor and purchaser of land, that the vendor should have a right to redeem before a stated time, *held*, under the evidence, to be a contract to repurchase, which right was lost by failure to exercise it within the stipulated time.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

### STATEMENT OF FACTS.

H. L. Matthews brought this suit in equity against E. E. Stevens to redeem 160 acres of land, and to that end seeks to have an absolute deed of conveyance to the land declared to be a mortgage.

H. L. Matthews was the original owner of the land, and had executed a mortgage on it to Huestess Bros. to secure an indebtedness approximating $1,500. Huestess Bros. had demanded payment of their mortgage, and had threatened to institute proceedings in court to foreclose it. On the 11th day of June, 1917, H. L. Matthews conveyed the land to E. E. Stevens by an absolute deed, and at the same time the parties entered into a written agreement with reference to the land, which is as follows: :

"This memorandum of agreement between E. E. Stevens and H. L. Matthews witnesseth:

"H. L. Matthews being the owner of the northeast quarter of section twenty-three, in township five north, range one east, and the said property being about to sell under mortgage foreclosure, and he being unable to borrow any money to pay off the said mortgage or to sell his interest in the said property for anything of value, because the mortgage debt amounts to the present value of the land.

"Now, upon the payment of the mortgage debt by E. E. Stevens I have made to him a deed, in consideration that I may redeem the said property on any day prior to November 1, 1918, upon the payment to E. E. Stevens of the amount paid out by him in satisfaction of the mortgage debt, any advances made me by the said E. E. Stevens before said date, any improvements made by the said Stevens on said place, any taxes paid by said Stevens, with interest on each of said items from their date at ten per cent. per annum.

"Witness our hand at Forrest City, June 11, 1917.

"E. E. STEVENS.

"H. L. MATTHEWS."

On the 15th day of June, 1917, E. E. Stevens and his wife executed a mortgage on said land to S. E. Bradshaw for the sum of $1,500. The money thus borrowed by Stevens from Bradshaw was used to pay off the mortgage indebtedness of Matthews to Huestess Bros.

H. L. Matthews was the principal witness for himself. According to his testimony he had made arrangements with Mr. Bradshaw to borrow the money from him with which to pay off the mortgage indebtedness to Huestess Bros. A contention arose between them with reference to cutting timber on the land, and Bradshaw refused to make the loan to Matthews. Matthews then induced Stevens to take a deed to the land and mortgage it to Bradshaw for the purpose of securing $1,500 with which to pay off said mortgage indebtedness. The substance of the testimony of Matthews is that the deed from himself to Stevens, although absolute in form, was intended as a mortgage to secure Stevens for the amount of the mort-

gage indebtedness from Matthews to Huestess Bros., which Stevens should pay off for him. On November 1, 1918, Matthews went to Stevens and offered to pay him the amount which he admitted to be due on the land, and demanded a deed back from Stevens. Stevens refused the tender, because the amount was not large enough.

W. E. Huestess was also a witness for the plaintiff. According to his testimony, he had authorized his attorney to commence foreclosure proceedings against Matthews because, on account of the boll weevil and other things, he thought the price of the land was going down, and the land was mortgaged for about its value. On November 1, 1918, he went with Matthews to Stevens for the purpose of redeeming the land. He was to furnish the money for Matthews, and had the amount which Matthews regarded necessary for redeeming the land. Stevens claimed that there was an additional amount due, which Matthews refused to pay, so that the land was not redeemed. Stevens had been in possession of the land from the time Matthews executed the deed to him on the 11th day of June, 1917, and had continued in the possession of it after the offer of Matthews to redeem it on the 1st day of November, 1918. After this time Stevens rebuilt the fences around the place and replaced a rail fence with a wire fence. He also cleared fifty acres of land, and did quite a lot of ditching.

There is a conflict in the testimony as to the cost of building the fences, digging the ditches and clearing the land. Stevens also paid the taxes on the land. Other testimony will be stated or referred to in the opinion.

The chancellor was of the opinion that the deed from Matthews to Stevens to the land was a mortgage, and decreed a foreclosure of the mortgage for the amount which he found to be due thereunder. Both parties have prosecuted an appeal to this court.

*W. A. Singfield,* for appellant.

The court erred in rejecting the statement introduced by appellant and accepting that introduced by appellee. 1 R. C. L. 210. In the absence of proof showing fraud,

mistake or error, the parties are concluded by the account stated. 41 Ark. 502; 53 Ark. 155; 13 S. W. 592; 68 Ark. 534; 60 S. W. 420; 85 Ark. 217; 107 S. W. 674; 29 L. R. A. (N. S.) 340. It is the duty of an agent to account for money of his principal received by him. 21 R. C. L. 832; 25 Ark. 219. Where a mortgagee makes repairs that are not necessary to preserve the estate, he is not entitled to compensation for them. 52 Ark. 381; 147 Ark. 611; Jones on Mortgages, § 1127; 52 Ark. 381; 147 Ark. 611.

*Mann & Mann,* for appellee.

It is a general rule of law that a deed is presumed to be of the character shown in the instrument, and that a deed absolute upon its face would not be construed to be a mortgage unless the presumption of law is overcome by evidence which is clear, unequivocal and convincing. 75 Ark. 551; 88 Ark. 299; 106 Ark. 583; 128 Ark. 67. For the purpose of ascertaining the true intention of the parties, all of the circumstances connected with the transaction should be taken into account, including the circumstances of the parties at the time, the property conveyed, and its value, and the written and oral agreements between the parties, and also the acts and declarations of both parties at the time the transaction was had. The adequacy of the price has been recognized as being of great weight in the consideration of this class of cases. 13 Ark. 112; note 20 A. & E. Ann. Cas. 1199. The real criterion is the existence or the nonexistence of a debt or liability between the parties, which might be enforced against the person making the deed. 75 Ark. 551; Jones on Mort. 265. A contract to release his right of redemption for an adequate consideration can be enforced. 139 Ark. 469. The delay of three and one-half years in itself would constitute laches in this case. 55 Ark. 85. When it is deemed unjust for either party to prevail because he has by his conduct done those things which might be regarded as waiving his rights, or has put the other party in a situation where it would not be reasonable to place him if the remedy were to be asserted, the doctrine of laches should be applied and the remedy barred. 86 Ark. 591.

HART, J., (after stating the facts).   It is well settled in this State that whenever, at the time of a sale, a vendor is indebted to the purchaser, and continues to be indebted after the sale, with the right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be considered by a court of equity as a mortgage. *Harman* v. *May,* 40 Ark. 146, and *Brewer* v. *Yancey,* 159 Ark. 256.

The effect of our decisions is that, whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own circumstances.   The question ultimately turns, in all cases, upon the real intention of the parties, as shown upon the face of the writings or as disclosed by extrinsic evidence.   The rule is undisputed that, to show that a deed is not in fact an absolute conveyance but was intended as a mortgage to secure a debt, the evidence must be clear, satisfactory and convincing.   *Hays* v. *Emerson,* 75 Ark. 551; *Snell* v. *White,* 132 Ark. 349; *Henry* v. *Henry,* 143 Ark. 607; and *Jefferson* v. *Soulter,* 150 Ark. 55.

It is true that the written agreement between the parties of the same date as the absolute deed recites the fact that Matthews had made to Stevens a deed, upon payment of the mortgage debt by Stevens, in consideration that Matthews may redeem the property upon any day prior to November 1, 1918.

The word, "redeem," however, has no definite significance.   It means to repurchase, or to regain, and does not necessarily imply the existence of a valid existing indebtedness.   The mere use of the word "redeem" is not sufficient to make a contract for reconveyance a defeasance.   If it be shown there was no debt from which redemption might be made and that the debt has, in fact, been extinguished, then the word will be construed as repurchase.   *Cole* v. *Beh* (Iowa), 132 N. W. 73; *Robinson* v. *Cropsey,* 2 Edwards' Ch. Repts. 138, affirmed in 6 Paige's Ch. (N. Y.) 479; 3 N. Y. Ch. Repts. bot. p. 1069, and *Pace* v. *Bartles,* 47 N. J. Eq. 170, Atl. 352.

In the last-mentioned case it is said that the distinction between a contract for repurchase and a defeasance is difficult to define, and that, in fact, they cannot be distinguished without taking into consideration all the facts and circumstances surrounding the transaction. Such is the effect of our own decisions on the subject.

In the case at bar the facts are that there was no indebtedness, in the first place, from Matthews to Stevens. Matthews had mortgaged the land to his nephew for an amount which, all the witnesses agree, was the full value of the land. Indeed, one of the mortgagees said that he was afraid that, on account of the boll weevil and other things, land would depreciate in value so that the land in question would not pay off the mortgage indebtedness, and, for this reason, they were about to foreclose their mortgage. Matthews had applied to Bradshaw for a loan to pay off the mortgage indebtedness, but, on account of some controversy in regard to cutting timber off of the land, Bradshaw refused to make him the loan. Matthews then procured Stevens to act for him. He executed an absolute deed to Stevens to the land. Stevens, in turn, mortgaged the land to Bradshaw for $1,500, and with the money paid off the mortgage indebtedness. At the same time a written agreement was executed between Matthews and Stevens wherein it was recited that the mortgage debt amounted to the present value of the land. The mortgage gave Matthews until November 1, 1918, to "redeem" the land upon paying to Stevens the amount paid out by him in satisfaction of the mortgage debt. and any advances made by him to Matthews. The liability of Matthews to Huestess Bros. was wholly discharged when Stevens paid off the mortgage indebtedness to them. Matthews was not liable thereafter to pay them anything or to pay anything to Stevens. He had the right to repurchase, if he saw proper to do so, upon paying a certain sum within the period designated in the written agreement. If the land had fallen in value Stevens could not, under the language of the contract and the circumstances

surrounding the transaction, have held Matthews responsible, and must himself have sustained the loss.

Therefore we are of the opinion that the transaction is a contract for repurchase, and not a mortgage. According to the testimony of Stevens, he offered to deed the land back to Matthews on the first day of November, 1918, if Matthews would pay him the amount due for such repurchase, under the terms of their written agreement. His testimony in this respect is contradicted by Matthews. Matthews says that he tendered to Stevens the amount due under the written agreement. Then, if he desired in good faith to repurchase the land, he should have proceeded promptly to exercise the right of repurchase given him under the contract. Instead of that, he waited from the first of November, 1918, until he brought this suit on March 18, 1922. During all this time Matthews lived near to the land and must have known what Stevens was doing with it. Stevens cleared about fifty acres of land, did considerable ditching on the land, and put a new wire fence around a large portion of it. He also made some other improvements of lesser consequence. As we have already seen, Matthews lived near to the land, and knew, or he must be charged with knowledge, that these improvements were being made. He made no protest of any kind, and this fact is evidence of considerable probative force in determining his good faith in the matter of repurchasing the land. The fact that he waited so long tends to negative the idea that his contention of the amount necessary to repurchase the land under their agreement, as testified to by him, was correct.

The result of our views is that the decree must be reversed, with directions to the chancery court to dismiss the complaint of Matthews for want of equity.