STURGIS *v.* HUGHES.

4-7203

178 S. W. 2d 236

Opinion delivered January 24, 1944.

*Morton & Sparks, D. H. Crawford* and *J. H. Lookâdoo,* for appellant.

*McMillan & McMillan,* for appellee.

SMITH, J.   This is a suit in ejectment, brought by appellants to recover from appellee· the possession of the northwest quarter, section 36, township 8 south, range 17 west. A former suit in unlawful detainer had been brought, in which it was alleged that appellee, Hughes, was in possession, without right, either as tenant or otherwise. That suit was dismissed and the instant suit was brought. Hughes filed an answer, in. which he alleged that a certain instrument executed by him, and relied upon by appellants as the basis of their suit, was in form a deed, but was in fact a mortgage, and he prayed that it be so declared, and that his title be quieted; whereupon the cause was transferred to equity, and at the trial, from which is this appeal, that contention was sustained, and the suit was dismissed as being without equity.

The record is voluminous, and the testimony is sharply conflicting upon this issue, and it is insisted that for this reason the decree should be reversed, as the relief prayed will be granted only upon testimony that is clear, cogent and convincing. This rule is conceded, but appellee insists that he met its requirement. But while the testimony must be clear, cogent and convincing, it is not required that it shall be undisputed. The testimony is sufficient to warrant this relief, if, notwithstanding the conflicts in the testimony, that which is credited and believed and found to be true, clearly and conclusively shows the instrument in question was intended to be a mortgage securing an existing debt, and was not intended as a deed. *Sewell* v. *Umsted,* 169 Ark. 1102, 278 S. W. 36; *Hoyer* v. *Edwards,* 182 Ark. 624, 32 S. W. 2d 812; *Foster* v. *Richey,* 192 Ark. 683, 93 S. W. 2d 1258; Jones on Arkansas Titles, Chap., Deeds, page 137.

Appellee Hughes entered into the possession of this land in 1909 as the tenant of J. N. Butler, from whom he purchased the land in 1913, for $900, and he has since been in possession at all times, claiming ownership. To complete his payments Hughes borrowed from Dougald McMillan $550, and to secure this loan he gave McMillan a mortgage on the land. To evidence this in-

debtedness three notes were executed by Hughes to McMillan, each for the sum of $183.33, and all bore interest at the rate of 10 per cent. per annum. Payments made by Hughes reduced this indebtedness to $326.65.

In 1922 and 1923, there arose in that vicinity an interest in oil development. S. W. Nix was engaged in procuring oil leases, and he obtained from Hughes an oil lease on 120 acres of the land, for which he paid $180, and agreed thereafter to pay a rental of $120 for the annual renewal of the lease. After obtaining this lease Nix learned that McMillan had a mortgage on the land. McMillan advised Hughes that he had given this lease for an inadequate consideration and he filed suit to foreclose his mortgage.

Hughes testified that he executed the deed as a mortgage to secure the repayment of the money paid McMillan by Nix, and that it was agreed that the rental of $120 per year should be applied to the payment of this loan, and that the debt to McMillan had been thus discharged. The chancellor evidently did not credit this statement in its entirety, nor do we. Nix testified that, ''I agreed to pay off the mortgage if they would fix it so I would be safe. They agreed to give me a deed for my protection and I paid off the mortgage.''

If this testimony of Nix is credited and the contract was one of sale, with the right to repurchase, the instrument was not a mortgage. Appellee correctly contends that the law is that, if it is the intention of the parties that the debt continue and the conveyance be security for the repayment, then the instrument, regardless of its form, is treated as a mortgage. *Buffalo Stave & Lumber Co.* v. *Rice,* 187 Ark. 731, 62 S. W. 2d 2; *Clark-McWilliams Coal Co.* v. *Ward,* 185 Ark. 237, 47 S. W. 2d 18. But if the parties intend that the debt be extinguished by the execution of the instrument, then the conveyance is a deed, even though there is a supplementary agreement that the grantor may, at his option, repurchase, but without obligation to do so. *Beloate* v. *Taylor,* 202 Ark. 229, 150 S. W. 2d 730.

In the case of *Matthews* v. *Stevens,* 163 Ark. 157, 259 S. W. 736, Justice HART said: "The word, 'redeem,' however, has no definite significance. It means to repurchase, or to regain, and does not necessarily imply the existence of a valid existing indebtedness. The mere use of the word 'redeem' is not sufficient to make a contract for reconveyance a defeasance. If it be shown there was no debt from which redemption might be made and that the debt has, in fact, been extinguished, then the word will be construed as repurchase." (Citing cases.)

When the deed was executed there was no debt due to Nix by Hughes. The only consideration moving to Hughes was the payment of the indebtedness due McMillan, and that was paid to the exact cent, and nothing more. It does not appear that before Nix's entry into the picture McMillan was pressing for payment of this debt.

The notary who took the acknowledgment of Hughes and wife to the deed, testified that he heard the transaction explained when the acknowledgment of Hughes' wife was taken, he having gone with Nix to Hughes' home for that purpose. The notary testified: "I understood Nix purchased a mineral lease on Hughes' property, which was mortgaged, and when the mortgagee decided to foreclose Nix asked Hughes and his wife to give him a deed and he would pay off the mortgage and in turn make Hughes a deed and put it in escrow with First National Bank, Fordyce, Arkansas, and when Hughes paid him the deed would be released to Hughes."

Hughes testified that on one occasion he called upon Nix to reconvey the land, and Nix said the matter would later be adjusted, but Nix denied this testimony.

The deed here in question was dated April 3, 1923, and it is undisputed that no demand was then made for possession, and it also appears to be undisputed that no such demand was made for more than ten years later.

The testimony is conflicting as to the value of the land when the deed was executed, but it is undisputed

that Hughes had paid $900 for it, and had borrowed $550 on the land. In addition, he had cleared a part of the land, the exact acreage not being shown, but he made each year a crop on the land, which he had cleared, and he obtained the annual benefits allowed by the AAA program on the representation that he was the owner of the land. He built a house, which he later tore down and rebuilt, and he drove a well and planted an orchard, and made other improvements, and we think the land was worth as much as three times the McMillan loan when the deed was made.

The land had been sold to the state for the non-payment of the general taxes, and a redemption was effected August 31, 1923, in the name of Hughes, as owner, but he appears to have paid only one-half of the money required for this purpose. However, Hughes redeemed the land from delinquency for certain improvement district taxes, after executing the deed.

Notwithstanding Nix's admission that Hughes was to have two years within which to repurchase it, yet within fifteen days after the execution and delivery of the deed, he conveyed the west one-half of the quarter section to Coy Hornsby, his brother-in-law, whose widow is a party plaintiff in this suit. There were other conveyances from and to persons claiming under Nix, but we do not add to the complication of this record by the recital thereof, as the parties do not urge these conveyances as of any controlling importance in deciding the issues raised by the pleadings and the testimony.

After the execution of this deed, Hughes paid taxes for the years 1923, 1924, 1925, 1926 and 1927 on the east one-half of the land. He did not pay taxes on the other one-half, although he testified that he attempted on one or more occasions to do so, and was told that the taxes had already been paid.

Now, the parties who paid the taxes for a period of more than seven years did not thereby acquire title to the land, under the provisions of § 8920, Pope's Digest, although they had color of title, for the reason that the

land was not wild and unoccupied. The undisputed testimony is to the effect that during all this time Hughes was in actual possession of portions of the land. We think the testimony shows he was holding this possession under claim of ownership.

The court below, in denying the relief prayed, found that the deed was executed as security for the McMillan debt, paid by Nix, which, as we find, was about one-third of its value. The court found that none of the parties plaintiff were innocent purchasers, because of the family and financial relationship existing between them and Nix, and for the further and more important reason that Hughes has at all times been in possession of the land, and this possession was sufficient to put them upon inquiry as to Hughes' interest in the land.

We have said the value of the land was about three times the debt paid McMillan by Nix. This fact is not conclusive of the character of the conveyance here in question; but the cases all hold that it is a potent circumstance entitled to much weight in the decision of that question. See *Walker* v. *Streeter,* 191 Ark. 604, 87 S. W. 2d 43, and other cases there cited.

Hughes testified in effect that the mortgage indebtedness to McMillan paid by Nix had long since been discharged by the accrual of the annual rentals which Nix agreed to pay to keep his oil lease in force. This testimony, if true, would be decisive of the litigation, but the court did not so find, nor do we. The court below made no specific finding upon this issue. We think the payment of the annual rental was optional with Nix and that he did not exercise that option. Nevertheless, the testimony shows that for 18 years after the execution of the deed, before the filing of this suit on August 5, 1941, Hughes occupied the land under the assumption that his debt would be and had been thus paid. Nix is the only person who could raise the question whether Hughes could obtain the equitable relief of having the deed declared to be a mortgage without paying the debt which the mortgage secured, and we do not, therefore, consider

the applicability of the case of *Temple* v. *Tobias,* 186 Ark. 851, 56 S. W. 2d 585, as Nix is not a party to this litigation. Hughes does not claim to have paid the debt, except by crediting the renewal rentals of the oil lease against it.

We concur in the finding of the court below that Hughes acquired title by adverse possession, but we do not concur in the finding that he acquired title to the entire quarter section in that manner. The testimony does establish the fact that for a period of many years, and more than seven, Hughes was in the actual possession of about 60 acres of the land, which he had inclosed with a fence.

Appellee insists that he has acquired title by adverse possession, not only to the inclosed land, but to all of it. Without reviewing or attempting to reconcile the conflicts in the testimony upon this issue, we announce our conclusion to be that appellee had acquired title to only so much of the land as he had pedal possession of for a period of seven years before the suit was filed.

It is true appellee was in actual possession of a portion of the land claiming title to all of it, but this claim was without color of title to support it, and the record title was in persons claiming under Nix, and those parties had the constructive possession of that part of the land not occupied by Hughes.

In the case of *Smith* v. *Southern Kraft Corp.,* 203 Ark. 814, 159 S. W. 2d 59, the facts were that Smith had actual possession of two small tracts of land in litigation under color of title, while the company had the constructive possession of the remainder under color of title. Each party claimed the constructive possession of the unoccupied part of the land. It was held that the owner of the record title had title to the whole of the tract, except only that part he had lost through the adverse possession of the other. The reason for this decision was stated to be, ''The general rule is that constructive possession follows the title and can only be

overcome or defeated by actual possession adverse thereto."

In this connection, it may be said that it has many times been held that where the grantor of land remains in possession there is a presumption that he holds in subordination to his grantee; but it is also true that such presumption fades away with the lapse of time, where his occupancy is unexplained. *Davis* v. *Burford*, 197 Ark. 965, 125 S. W. 2d 789, and cases there cited. Such explanation as there is of Hughes' possession is to the effect that he was holding adversely, and not in subordination to the title of his grantee.

We conclude, therefore, that Hughes has acquired title to so much only of the land as he had occupied for seven years before the filing of the complaint in this cause. The decree of the court below will, therefore, be modified in this respect and the cause will be remanded, with directions to ascertain and describe the land so adversely occupied, and as to the remainder a decree will be entered quieting title in appellants as reflected by the deeds under which they acquired Nix's title.

SMITH, J., (supplemental opinion on rehearing). It is an undisputed fact that Hughes executed to Nix a warranty deed conveying the land here in question. There is nothing about the deed and no recital therein which indicates that it was not what it purported to be, an absolute conveyance of the title to the land.

The testimony does show that when this deed was executed Nix agreed that Hughes might re-purchase the land. This testimony was supported by the notary public who took the acknowledgment and who was called by Hughes to prove that the deed was not an unconditional conveyance of the land. It was never a mortgage, because, prior to its execution, there was no debt to Nix from Hughes, and there was, therefore, no debt for it to secure.

Nix testified that he purchased the land outright, but did agree that Hughes might have two years within

which to re-purchase, and the testimony of the notary public corroborates this testimony. According to the notary, the agreement was that Nix would reconvey when paid the purchase money advanced, which was used to discharge the McMillan mortgage.

This suit was begun by Nix's vendees, as an action in ejectment, and was based upon a deed which *prima facie* entitled the plaintiffs to the relief prayed. To defeat that action, Hughes pleaded that the instrument, in form a deed, was, in fact, a mortgage, which had been paid by delayed rentals, and the court sustained that contention, but we refused to affirm that finding. Our view of the testimony was, and is, that Nix had an option to continue in force the lease in his favor by paying the annual rentals, even though Hughes redeemed the land, but that it was optional with him to do so.

But the land was never re-purchased. On the contrary, much testimony was offered by appellants to the effect that Hughes' possession was at all times permissive, a contention which we did not sustain. But the facts are undisputed that Hughes has had his mortgage to McMillan discharged, without paying a cent of that debt; he paid taxes altogether for only five years, the last payment being the 1927 taxes, but even these were paid on only one-half of the land. On the other one-half, he never paid any taxes, and all the taxes not paid by Hughes were paid by plaintiffs. We held, however, that these payments of taxes for more than seven years did not give title, under § 8920, Pope's Digest, for the reason that the land was not wild and unoccupied as required by that statute.

The difficulty with this case is that we were unable to accept as true, in its entirety, the testimony offered by either appellants or appellees, and we based our opinion upon such portions of the testimony as we credited and believed to be true.

There was no mortgage, because there was no debt due Nix. There was a conveyance of the land, with an agreement, as testified to by the notary public, that Hughes might re-purchase, but he has never exercised

that option. Hughes' attitude is that of one who asks the equitable relief of having a deed declared to be a mortgage without paying the debt which it secured. Under the facts, as we find them to be, it would be inequitable to grant that relief.

We do not sustain appellants' contention that Hughes' possession was permissive, but we do find that his possession conferred no title beyond the extent of the land actually occupied for more than seven years, for the reason that the constructive possession of the remainder attached to the record title held by appellants. It is said that appellants proved no actual possession, and this is true, but that title is not based upon possession, but upon the record title which they have.

It is prayed that, if the decree is not affirmed, the cause be remanded, that further testimony may be taken. But the case was fully developed upon the issues joined, and much testimony was taken, which, as we have said, is filled with the sharpest and most irreconcilable conflicts, and we are unwilling to order a second trial of this cause, for the reason that there must be an end to litigation.

The petition for rehearing is, therefore, denied.