Gunnels *v.* Machen.

4-8604                               212 S. W. 2d 702
Opinion delivered July 5, 1948.

*Jack Machen,* for appellant.

*Gaughan, McClellan & Gaughan,* for appellee.

Minor W. Millwee, Justice. Appellee, L. F. Machen, has resided at Camden, Arkansas, for the past five years where he is employed at a paper mill. He formerly lived near Village in Columbia county, Arkansas, where he still owns a 120-acre farm. In 1944, he was also the owner of a two-sevenths interest in a 65-acre tract near Village, having inherited a one-seventh interest from his father and acquired a one-seventh interest from another heir. Appellant has been engaged in the mercantile business at Village for a number of years and the parties have had considerable business dealings.

On March 20, 1944, appellees executed a warranty deed, absolute in form, conveying their undivided interest in the 65-acre tract to appellant for a recited consideration of $10. Machen had the deed prepared at Magnolia and took the instrument to the First National Bank there. W. C. Blewster, president of the bank, gave Machen a check for $400 drawn on appellant's account. Machen cashed the check and left the deed with Blewster. 'A few days later Blewster gave the deed to appellant who placed it in his safety deposit box at the bank without recording it.

In May, 1945, appellant had another deed prepared conveying the same two-sevenths interest in the land and sent it to Camden by his son for execution by appellees. This deed recited a consideration of $100, and was executed by appellees on May 12, 1945, and filed for record by appellant on May 21, 1945. It recites: "This deed given to replace a former deed which has been lost."

Machen was in Village on December 14, 1944, when he paid appellant $18 and took a receipt prepared and signed by appellant which recites: "Paid on land $18.00." After recording the second deed, appellant sold timber off the land and executed an oil and gas lease covering it.

Appellees instituted this suit to have the deeds given to appellant declared to be a mortgage and to be permitted to redeem the two-sevenths interest in the land from it. They alleged in their complaint that the deed first executed, though absolute in form, was in fact given as security for a loan of $400 from appellant to L. F. Machen and with the understanding that said deed would be held as security for payment of the loan; that when Machen later offered to pay the loan he learned that appellant had recorded the second deed contrary to the agreement of the parties; that appellant refused to accept payment of the indebtedness and claimed the land as his own by virtue of the deed.

Appellant answered and denied the allegations of the complaint as to the deed being intended as a mortgage and asserted that he purchased appellees' interest in the lands for a consideration of $400 and that the deeds were executed as an absolute conveyance pursuant to such sale and purchase. The chancellor found the issues in favor of appellees declaring the deeds were given to secure a debt and intended as a mortgage and allowing redemption therefrom. This appeal challenges the sufficiency of the evidence to support the finding of the chancellor.

There is a decided conflict in the testimony as to the agreement between the parties when the first deed was executed and as to certain happenings thereafter.

L. F. Machen testified: He built a house on his 120-acre farm and lacked $400 having sufficient funds to complete payment of construction costs. In March, 1944, he approached appellant at his store in Village and asked him if he wanted to buy the two-sevenths interest in the 65-acre tract and appellant told him he was not interested in buying it because he did not want to become involved with that many heirs in the land. Machen then told appellant that he did not want to sell the interest, but would like to borrow enough to finish payments for the house on the other tract. Appellant agreed to make the loan, but declined to take a second mortgage which Machen offered to give on the 120-acre tract. Appellant then proposed that appellees execute a deed to the two-sevenths interest in the 65-acre tract and place it in the bank as security for the loan. Machen agreed to this arrangement and explained that he might not be able to repay the loan before fall. Appellant stated that this would be satisfactory and directed Machen to have the deed prepared. The next day Machen had the deed prepared and took it to the First National Bank in Magnolia where he expected to meet appellant. Mr. Blewster at the bank telephoned appellant who directed Blewster to sign appellant's name to a check for $400 to Machen and accept the deed. Machen cashed the check and delivered the deed to Blewster.

Machen further testified that he came to Village on December 14, 1944, and told appellant that sickness in his family had rendered him unable to make monthly payments on the debt, but offered to get the money if appellant wanted it. Appellant told him that he did not need the money and to go ahead and pay when he could. Machen had $18 with him which he paid appellant and took appellant's receipt which recited, "Paid on land $18.00." Machen also had an account at the store and assumed that the receipt was so worded to show that payment was on the land debt rather than on his store account. He did not see appellant again until the first of January, 1946. He usually went to Village in the fall to collect rent from his brother who was farming the 120-acre tract, but did not go in the fall of 1945 be-

cause his brother had not sold his cotton and Machen did not expect to get any rent until the first of the year. When he went to appellant's store in January, 1946, to pay off the $400 debt, appellant was not there and his son told Machen that his father had put the deed on record, and that appellee would have to see him. After finding the deed had been placed on record, he made four trips from Camden to see appellant and found him at the store on the fifth trip.

Machen gave the following account of their conversation at that time: ''I says this is the 5th trip I have made here to see you, and I says I can't understand, what you mean by putting that deed on record, and I says what did you do it for, you had no right to do that; he says you told me to, I says I never done anything of the kind, why he says you certainly did, I says when, he says I don't remember the date but some time when you was in here, and then I took out this receipt and I asked him did you sign this, and he says yes, and I says then why did you put the deed on record after I made a payment on it; he says you think I would donate it to you; he says I don't know why you did it; I says that is as big a lie as ever fell from human lips, and I says I have the money ready for you, if you want it you can have it, if not I can't help it; and I turned around and walked out. I says I couldn't do anything about that without getting a lawyer, and I got one, and that is the end of the story.''

Machen also testified that he had borrowed small sums from appellant several times prior to 1944 without giving a note or any kind of security; that on one occasion he borrowed a substantial sum to buy an oil lease and when he sold the lease he repaid appellant and gave him one-half of the profit on the sale. He also stated that he borrowed $250 from appellant in April, 1937, and executed a deed covering the same two-sevenths interest in the land here involved to secure the loan. On that occasion the deed was made to the son of appellant at appellant's request. When Machen repaid the loan to appellant three months later, the son reconveyed to Machen. Both deeds were recorded and introduced in evidence by

appellees. Appellant disclaimed any knowledge of the transaction.

Appellant gave the following version of the transactions between the parties: Machen approached him in March, 1944, about selling the two-sevenths interest and he told Machen that he was not interested in buying an undivided interest in the estate; that Machen then proposed that if appellant would buy the interest and was unsuccessful in acquiring the interest of the other heirs or if Machen was unsuccessful in acquiring the other interests for appellant, then Machen would repurchase the two-sevenths interest; that he agreed to this arrangement and directed Machen to have the deed prepared and nothing was said about the time within which Machen might repurchase the land. .

Appellant gave the following testimony concerning his conversation with Machen at the time he gave Machen the receipt for the $18 payment: "Q. This receipt that has been introduced by the plaintiff, that is. the receipt you gave him, is it? A. Yes. At that time he hadn't paid any of the other and I was still hoping he would buy it back, and I had told him I wouldn't take it under any circumstances; so, I never heard any more from him in 30 days, and he came back and told me, he says Baxter, go ahead and take the place, he says my wife has been sick and I have had lots of doctor bills and it don't look like I will ever get the money, and I says is that what you want to do and he says yes . . ."

Appellant also stated that he had forgotten where he left the first deed and had the second deed executed to replace it. He bought the interest of two other heirs after the second deed was recorded and stated that he did not see Machen after January, 1945, until some time in January, 1947. Huie Eads testified on behalf of appellant that he had a conversation with Machen in 1945 in which he offered to buy the land in controversy and Machen told him he had sold it to appellant. In rebuttal, Machen stoutly denied the statement although he admitted having a conversation with the witness. He detailed the circumstances surrounding the conversation and defi-

nitely fixed the time of its occurrence as the year 1943, which was prior to the date of the execution of the first deed to appellant.

It was shown that the lands in controversy had little, if any, market value for oil until a few months prior to July, 1945, when a wildcat well was brought in about a mile east of the land.

The rule is well established by many decisions of this court that in order to change, by parol testimony, the purport of a deed, absolute in form, by showing that it was executed as a mortgage, the proof must be clear, unequivocal and convincing. *Hayes* v. *Emerson,* 75 Ark. 551, 87 S. W. 1027; *Rushton* v. *McIllvene,* 88 Ark. 299, 114 S. W. 709; *Wimberly* v. *Scoggin, Receiver,* 128 Ark. 67, 193 S. W. 264; *Holman* v. *Kirby,* 198 Ark. 326, 128 S. W. 2d 357; *Watson* v. *Clayton,* 203 Ark. 1097, 160 S. W. 2d 849. While it requires clear and decisive testimony to prove that a deed absolute in form was intended as a mortgage, it is not required that it shall be undisputed or absolutely conclusive. *Scott* v. *Henry,* 13 Ark. 112; *Hoyer* v. *Edwards,* 182 Ark. 624, 32 S. W. 2d 812; *Sturgis* v. *Hughes,* 206 Ark. 946, 178 S. W. 2d 236.

In the recent case of *McBride* v. *McBride,* 208 Ark. 739, 187 S. W. 2d 341, we said: ''Appellee argues that the decree should be affirmed for the reason that this court has many times held that a deed, in form, will not be decreed to be a mortgage in fact, except upon testimony that is clear, unequivocal and convincing, and so we have. And it is insisted also that the testimony is sharply conflicting, and so it is. But while we have held that the relief of declaring an instrument in form a deed to be a mortgage in fact will not be granted except upon testimony that is clear and convincing, we have also held that it is not required that the testimony be undisputed; but that this relief will be granted if, notwithstanding conflicts in the testimony, that testimony which is credited and believed to be true, meets the requirements imposed by law. *James, et al.* v. *Furr, et al.,* 126 Ark. 251, 190 S. W. 444; *Berard* v. *Fitzpatrick,* 134 Ark. 190, 203 S. W. 1039.'' In the case last cited, it is

said: "Indeed, in suits of this character the testimony is quite frequently in sharp conflict, but the relief prayed for is not refused on that account if, from the testimony as a whole, it clearly and certainly appears that the writing in question was not to have the effect which its terms ordinarily import."

Although no mention was made of a contract to repurchase the land in the pleadings, appellant testified that such an agreement was made with Machen. The cases of *Matthews v. Stevens,* 163 Ark. 157, 259 S. W. 736; *Beloate v. Taylor,* 202 Ark. 229, 150 S. W. 2d 730; *Sturgis v. Hughes,* 206 Ark. 946, 178 S. W. 2d 236; and *Newport v. Chandler,* 206 Ark. 974, 178 S. W. 2d 240, are cited in support of appellant's contention that a contract to repurchase rather than a debt is involved in the instant case. It would unduly extend this opinion to point out the difference between the facts of those cases and those involved in the instant case.

In *Matthews v. Stevens, supra,* Justice HART, speaking for the court, said: "It is well settled in this State that whenever, at the time of a sale, a vendor is indebted to the purchaser, and continues to be indebted after the sale, with the right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be considered by a court of equity as a mortgage. *Harman v. May,* 40 Ark. 146, and *Brewer v. Yancey,* 159 Ark. 257, 251 S. W. 677.

"The effect of our decisions is that, whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own circumstances. The question ultimately turns, in all cases, upon the real intention of the parties, as shown upon the face of the writings or as disclosed by extrinsic evidence. The rule is undisputed that, to show that a deed is not in fact an absolute conveyance, but was intended as a mortgage to secure a debt, the evidence must be clear, satisfactory and convincing. *Hays v. Emerson,* 75 Ark. 551 87 S. W. 1027; *Snell v. White,* 132 Ark. 349, 200 S. W. 1023; *Henry v. Henry,* 143 Ark. 607, 221 S. W. 481; and *Jefferson v.

*Souter,* 150 Ark. 55, 233 S. W. 804.'' See, also, *DeLoney* v. *Dillard,* 183 Ark. 1053, 40 S. W. 2d 772; and *Holman* v. *Kirby, supra.*

There are several circumstances in the case at bar that give strong support to the proposition that a debt was created at the time of the execution of the deed to appellant and that the instrument was intended by the parties to secure the debt. It is certain that appellant did not want to buy the property. It is also significant that appellant left the first deed in the bank without recording it and that he secured the second deed and placed it of record about the time leases were being obtained for the drilling of an oil well near the land. The payment of the $18 by Machen on December 14, 1944, and the issuance of the receipt therefor by appellant is a significant circumstance showing a recognition by both parties that an indebtedness existed. The fact that a note was not given to evidence the loan would be a strong circumstance in favor of appellant, but for the further showing that Machen had previously obtained loans from appellant by delivery of a deed as security and without executing a note.

The Chancellor made exhaustive findings in which he applied the well established rule that the testimony in appellees' favor must be clear, unequivocal and convincing. The evidence is, in our opinion, sufficient to support his conclusion that appellees have fully discharged the burden resting upon them under the rule.

Affirmed.